Tab "A"

IN THE COURT OF COMMON PLEAS OF BRADFORD COUNTY, PENNSYLVANIA

WARNER VALLEY FARM, LLC,       CIVIL DIVISION

      Plaintiff,               NO. 2021 CV 0092

v.

SWN PRODUCTION COMPANY, LLC

      Defendant.

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**PROTHONOTARY**
**Bradford County Courthouse**
**301 Main Street**
**Towanda, PA 18848**
**(570) 265-1705**

{CLIENT WORK/41809/0000 H1765476:6}

IN THE COURT OF COMMON PLEAS OF BRADFORD COUNTY, PENNSYLVANIA

WARNER VALLEY FARM, LLC,        CIVIL DIVISION

      Plaintiff,          NO. 2021 CV 0042

v.

SWN PRODUCTION COMPANY, LLC

      Defendant.

## COMPLAINT

AND NOW, come the Plaintiff, by and through its undersigned counsel, Robert J. Burnett, Esquire, Brendan A. O'Donnell, Esquire and Houston Harbaugh, P.C., and file the within Complaint in Civil Action against the above-named Defendant and, in support thereof, aver as follows:

### Parties

1.    Plaintiff Warner Valley Farm, LLC is a limited liability company with an address of 2471 Leisure Lakes Road, Stevensville, Pennsylvania 18845.

2.    Defendant SWN Production Company, LLC ("SPC") is a limited liability company with its address being care of its registered agent CT Corporation System, 600 N. 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101.

### The Oil and Gas Lease and Property in Question

3.    On April 12, 2006, Wayne W. Warner and Reba Warner executed an oil and gas lease (the "2006 Lease") in favor of Fortuna Energy, Inc. A Memorandum of the 2006 Lease was recorded at the Office of the Recorder of Deeds of Bradford County, Pennsylvania at Instrument Number 200802350. A copy of the 2006 Lease and the Memorandum of Lease are collectively attached hereto as **Exhibit A**.

4.     The 2006 Lease applied to 506.46 acres in Pike Township and Stevens Township in Bradford County, Pennsylvania, which the 2006 Lease described as the "Leasehold" (hereinafter, the "Leasehold"). The Leasehold consisted of the following tracts:

|    |                           |              |
|----|---------------------------|--------------|
| a. | Tax ID No. 29-77.00-133   | 7 acres      |
| b. | Tax ID No. 44-77.00-21    | .91 acres    |
| c. | Tax ID No. 44-77.00-18    | 261.46 acres |
| d. | Tax ID No. 29-77.00-132   | 127.1 acres  |
| e. | Tax ID No. 29-64.00-99    | 109.99 acres |

*See,* Exhibit A.

5.     By way of a deed dated September 22, 2010, Wayne W. Warner and Reba Warner conveyed all of their oil, gas and other mineral interests in and under various properties, which included parts of the Leasehold, to Warner Valley Farm, LLC. A copy of this Deed is attached hereto as **Exhibit B**.

6.     The lessee's interest under the 2006 Lease has been assigned among various different entities. SPC obtained interests under the 2006 Lease through Assignments of Oil and Gas Leases dated effective May 9, 2019 from Repsol Oil & Gas USA, LLC, recorded in the Office of the Recorder of Deeds of Bradford County, Pennsylvania at Instrument Number 201909733 and Instrument Number 201909735. Copies of these instruments are collectively attached hereto as **Exhibit C**.

**Unitization of the Leasehold and Payment of Royalties**

7.     Over the years, the 2006 Lease, and the Leasehold have been included in a number of production units. Upon information and belief, at present, the Leasehold, under the 2006 Lease, is included in the:

a. Neiley-Updegraff Gas Unit;

b. Warner Valley Farm V Unit;

c. Walters J Unit;

d. Edsell C Unit;

e. Chamberlin Meyer North Gas Unit; and

f. Campbell Ercole Demento Gas Unit.

(collectively, the "Units")

8. Upon information and reasonable belief, SPC established the Campbell Ercole Demento North Gas Unit and the Chamberlin Meyer North Gas Unit (the "SPC Units"). Unit declarations for these units are collectively attached hereto as **Exhibit D**.

9. Upon information and reasonable belief, oil and gas wells have been drilled in the Units.

10. Upon information and belief, some gas wells in the SPC Units have been drilled so that their horizontal component crosses beyond the boundaries of a single production unit and extends into more than one than one production unit.

11. Upon information and reasonable belief, the following wells have been drilled such that they extend into and through more than one of the SPC Units:

a. Chamberlin Meyer #8H;

b. Chamberlin Meyer #9H;

c. Chamberlin Meyer #10H;

d. Chamberlin Meyer #11H;

e. Campbell Ercole Demento #10H;

f. Campbell Ercole Demento #11H.

(collectively, the "Cross Unit Wells").

12.     Upon information and reasonable belief, SPC is the "operator" of the Cross Unit Wells with the Pennsylvania Department of Environmental Protection.

13.     The Plaintiff receives royalties under the 2006 Lease from wells in the Units, including the SPC Units and Cross Unit Wells.

14.     SPC pays production royalties to the Plaintiff under the 2006 Lease, including from the Cross Unit Wells. An exemplar royalty statement, showing SPC's calculation of the royalty, is attached as **Exhibit E**.

### Unitization and Royalties Have Breached the 2006 Lease

15.     The 2006 Lease specifically defines how royalties are to be paid to the Plaintiff:

ROYALTY: to pay Lessor a royalty in an amount equal to the current market value at the wellhead as and when produced of one-eighth (1/8th) of all oil, gas and the constituents thereof produced, saved, marketed and sold from the Leasehold (the "Royalty"). In no event shall the current market value be deemed to be in excess of the value actually received by the Lessee pursuant to a bona fide, arm's length sale or transaction. Lessee may withhold Royalty payments until such time as the total withheld exceeds twenty-five ($25.00) dollars.

*See,* Exhibit A at ¶ 4(a)(ii).

16.     The express language of the Royalty provision ties payments to the hydrocarbons produced from the Leasehold. *See,* Exhibit A at ¶ 4(a)(ii).

17.     The express language of the Royalty provision requires that the royalty be paid on hydrocarbons with are "marketed" and "sold" – specifically identifying these as separate activities. *See,* Exhibit A at ¶ 4(a)(ii).

18.     Paragraph 12 of the 2006 Lease, entitled "Pooling/Unitization" sets forth the nature and extent of the lessee's right to unitize and pool the Leasehold. *See,* Exhibit A.

19.     Paragraph 12 of the 2006 Lease addresses the Plaintiff's entitlement to royalties in

the event the Leasehold (or part thereof) is pooled or unitized:

> Lessor shall, in lieu of the Royalty, accept and receive out of the revenue realized
> from the production associated with such drilling or production unit, the same
> proportion of the Royalty stipulated herein as the surface area of the Leasehold
> within such drilling or production unit is to the total surface area comprising such
> drilling or production unit.

*See,* Exhibit A at ¶ 12.

20.     This provision expressly ties the royalty obligation to the "revenue realized from

the production associated with such drilling or production unit" based on the "surface area of the

Leasehold within such drilling or production unit." *See,* Exhibit A at ¶ 12.

21.     The "Pooling/Unitization" provision in the 2006 Lease refers to royalty payments

based on production from singular production units. The "Pooling/Unitization" provision in the

2006 Lease does not grant any right to allocate production based on wells that cross between

drilling units, such as the Cross Unit Wells. *See,* Exhibit A at ¶ 12.

22.     The "Pooling/Unitization" provision in the 2006 Lease, and the 2006 Lease more

broadly, do not grant any rights to allocate or apportion production *to* a production unit. Instead,

the contract contemplates production units from which the volumetric production can be

ascertained with certainty. That can only be done when a well is entirely located within the

boundaries of the production unit.

## COUNT I
## Breach of Contract

23.     The Plaintiff incorporates by reference Paragraphs 1 through 22 as though set

forth at length herein.

24.     The 2006 Lease is a contract between the Plaintiff and SPC.

25.     The Leasehold subject to the 2006 Lease has been pooled into the Units.

26.     The pooling and/or unitization of the Leasehold into the Units is governed and controlled by rights granted in the 2006 Lease.

27.     Upon information and belief, the SPC Units include Cross Unit Wells.

28.     Upon information and belief, SWN is paying the Plaintiff royalties associated with Cross Unit Wells under the 2006 Lease.

29.     SWN has breached the 2006 Lease by the unilateral drilling and operation of the Cross Unit Wells involving the Chamberlin Meyer North Gas Unit and the Campbell Ercole Demento North Gas Unit.

30.     Paragraph 12 of the 2006 Lease, entitled "Pooling/Unitization," sets forth the nature and extent of the lessee's right to unitize and pool the Leasehold. *See,* Exhibit A.

31.     Paragraph 12 of the 2006 Lease does not authorize the drilling or operation of the Cross Unit Wells, or any other laterals that cross between and among different production units.

32.     To the contrary, the 2006 Lease specifically and expressly requires all wells to be located within singular drilling units.

33.     SWN has breached the 2006 Lease by drilling and operating the Cross Unit Wells in the Chamberlin Meyer North Gas Unit and the Campbell Ercole Demento North Gas Unit.

34.     The Plaintiff has been damaged by this breach because it has resulted in the underpayment of production royalties.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment in its favor and against Defendant SWN Production Company, LLC in an amount to be determined at trial, together with any and all other relief that this Honorable Court may award, including any applicable interest and fees.

## COUNT II
### Breach of Contract

35.     The Plaintiff incorporates by reference Paragraphs 1 through 34 as though set forth at length herein.

36.     The 2006 Lease is a contract between the Plaintiff and SPC.

37.     The Leasehold subject to the 2006 Lease has been into the Units.

38.     Upon information and belief, the SPC Units include Cross Unit Wells.

39.     Upon information and belief, SWN is paying the Plaintiff royalties associated with Cross Unit Wells under the 2006 Lease.

40.     It is averred that SWN's calculation and payment of production royalties associated with hydrocarbon production from the aforesaid Cross Unit Wells constitutes a material breach of the 2006 Lease.

41.     The 2006 Lease provides that, in the event of pooling and unitization, "Lessor shall, in lieu of the Royalty, accept and receive out of the revenue realized from the production associated with such drilling or production unit, the same proportion of the Royalty stipulated herein as the surface area of the Leasehold within such drilling or production unit is to the total surface area comprising such drilling or production unit." *See,* Exhibit A.

42.     Upon information and reasonable belief, SPC is not recording the volumes and nature of hydrocarbons being produced from specific production units through the Cross Unit Wells.

43.     Upon information and reasonable belief, SPC is allocating production from the Cross Unit Wells among the production units where those wells are located.

44.     Said allocation methodology does not comply with the express language of the 2006 Lease, which entitles the Plaintiffs to the "revenue realized from the production associated

with such drilling or production unit" based on the surface acreage of the Leasehold in that unit. *See,* Exhibit A.

45. SWN has breached the 2006 Lease by calculating and paying royalties to the Plaintiffs based on allocated production volumes and hydrocarbon composition from the Cross Unit Wells in the Chamberlin Meyer North Gas Unit and the Campbell Ercole Demento North Gas Unit instead of the actual production volumes from the Units.

46. The Plaintiffs have been damaged by this breach because it has resulted in an underpayment of production royalties.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment in its favor and against Defendant SWN Production Company, LLC in an amount to be determined at trial, together with any and all other relief that this Honorable Court may award, including any applicable interest and fees.

## COUNT III
### Declaratory Judgment – Constitutionality of Act 85 of 2019

47. The Plaintiff incorporates by reference Paragraphs 1 through 46 as though set forth at length herein.

48. The Plaintiff seeks a judicial declaration that Pennsylvania Act 85 of 2019 is an unconstitutional infringement on private contracts under Article 1, Section 17 of the Pennsylvania Constitution and/or Article I, Section 10, Clause 1 of the United States Constitution.

49. Pennsylvania Act 85 of 2019 purported to authorize the inclusion of oil and gas leaseholds into production units where wells spanned more than one unit, along with royalty payments from such wells that span more than one unit, unless those cross-unit drilling was "expressly prohibited by the terms of [the] lease."

50.     The 2006 Lease, as an oil and gas lease, is a contract.

51.     The rights granted to the lessee under the 2006 Lease are expressly set forth in the text of the contract.

52.     Pennsylvania Act 85 of 2019 was enacted over a decade after the 2006 Lease was executed.

53.     Pennsylvania Act 85 of 2019 modifies and impairs the contractual relationship established in the 2006 Lease by purporting to grant rights (cross unit drilling) that were not granted in the 2006 Lease, and also by establishing a new mechanism for royalty payments, that is based on an allocated volume from a production unit, versus the actual production from the unit, as required by the 2006 Lease.

54.     It is averred that Act 85 of 2019 operates as a substantial impairment of the contractual relationship between the Plaintiff and SPC under the 2006 Lease because the agreed-to contractual text regarding unitization/pooling and royalties is wholly re-written by the law, which materially affects the benefit of the bargain in the contract for the Plaintiff.

55.     It is averred that Act 85 of 2019 does not serve a significant and legitimate public purpose. Royalty payments under matters of contract under oil and gas leases. Likewise, none of the Units involving the Leasehold that include Cross Unit Wells were established by governmental action or regulation. Rather, all of the Units were assembled and created based on contractual rights granted in leases, including the 2006 Lease.

WHEREFORE, the Plaintiff seeks a judicial declaration and determination that Pennsylvania Act 85 of 2019 is an unlawful impairment of the 2006 Lease contract that violates the Pennsylvania Constitution (Article I, Section 17) and the United States Constitution (Article I, Section 10).

## COUNT IV
## Breach of Contract

56.     The Plaintiff incorporates by reference Paragraphs 1 through 55 as though set forth at length herein.

57.     The 2006 Lease is a contract between the Plaintiff and SPC.

58.     The 2006 Lease identifies and defines the method and manner of calculating the lessor's production royalty.

59.     The 2006 Lease requires royalties to be paid based on the current market value at the wellhead for gas produced from the Leasehold or from the Units. *See,* Exhibit A.

60.     It is averred that the 2006 Lease specifically requires that the royalty be based on the hydrocarbons produced from the Leased Premises or the Units.

61.     Upon information and belief, SPC does not calculate or pay a production royalty based on the current market value at the wellhead of the gas produced from the Leasehold or from the Units.

62.     Instead, it is reasonably believed and therefore averred that SPC calculates and pays a production royalty based on a computed "net-back" value that is based on sales and costs that are unrelated to the gas produced from the Leasehold or from the Units.

63.     It is further averred that the market value at the wellhead, which is the focal point of the royalty, must be informed by efforts to market and sell the hydrocarbons at the wellhead.

64.     The royalty provision in the 2006 Lease separately refers to hydrocarbons that are "marketed" and "sold" from the Leasehold.

65.     Consequently, it is insufficient and improper to calculate the market value of hydrocarbons at the wellhead under the 2006 Lease if no attempt is made to actually market *these* hydrocarbons at the wellhead.

66.     It is averred that SPC has not made any effort to market the hydrocarbons produced from the Leasehold or the Units at the actual wellhead.

67.     It is averred that SPC's practice of calculating and paying the production royalty is therefore improper and constitutes a material breach of the 2006 Lease.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment in its favor and against Defendant SWN Production Company, LLC in an amount to be determined at trial, together with any and all other relief that this Honorable Court may award, including any applicable interest and fees.

**COUNT V**
**Breach of Contract**
**(In the Alternative)**

68.     This Count is asserted without admitting or conceding that SPC may calculate or pay the royalty due to the Plaintiff by deducting any post-production costs or calculating a royalty at a sales point downstream of the wellhead. It is asserted in the alternative to Count IV.

69.     The Plaintiff incorporates by reference Paragraphs 1 through 67 as though set forth at length herein.

70.     The 2006 Lease is a contract between the Plaintiff and SPC.

71.     The 2006 Lease identifies the royalty due from SPC to the Plaintiff as being ". . . an amount equal to the current market value at the wellhead as and when produced of one-eighth $(1/8^{th})$ of all oil, gas and the constituents thereof produced, saved, marketed and sold from the Leasehold." *See,* Exhibit A at ¶ 4(a)(ii).

72.     Paragraph 12 of the 2006 Lease addresses the Plaintiff's entitlement to royalties in the event the Leasehold (or part thereof) is pooled or unitized:

> Lessor shall, in lieu of the Royalty, accept and receive out of the revenue realized from the production associated with such drilling or production unit, the same

proportion of the Royalty stipulated herein as the surface area of the Leasehold within such drilling or production unit is to the total surface area comprising such drilling or production unit.

*See,* Exhibit A at ¶ 12.

73. SPC pays a production royalty to the Plaintiff. *See,* Exhibit E.

74. The royalty that SPC pays to the Plaintiff contains a "price" and sets forth "deductions" from this price for activities such as "compression", "gathering" and "other". *See,* Exhibit E.

75. It is averred that this alleged "price" is obtained downstream of the "wellhead".

76. It is reasonably believed and therefore averred that for the gas produced from wells in the Units that are the subject of SPC's royalty payments to the Plaintiff under the 2006 Lease, SPC purports to calculate the market value at the wellhead of gas based on this "price" less "deductions". *See,* Exhibit E.

77. While it is not admitted or conceded that SPC may determine and/or calculate the royalty paid to the Plaintiff under the 2006 Lease based on a "price" obtained downstream of the wellhead, if this method were an acceptable means of calculating royalties, it is nonetheless a breach of the 2006 Lease.

78. The "Royalty" provision in the 2006 Lease expressly ties the royalty payable to the Plaintiff to hydrocarbons that are "marketed and sold". *See,* Exhibit A at ¶ 4(a)(ii). This creates an express obligation by SPC to market the hydrocarbons produced from the wells subject to the 2006 Lease for which SPC pays a royalty to the Plaintiff.

79. The "Royalty" provision in the 2006 Lease references the concept of market value in the context of a "bona fide, arm's length sale or transaction", which is associated with marketing and sales by SPC as lessee. *See,* Exhibit A at ¶ 4(a)(ii).

80. Upon information and belief, the obligation to market hydrocarbons required SPC to seek and obtain the best price reasonably available for the hydrocarbons produced from these wells.

81. SPC breached this obligation.

82. Upon information and belief, SPC has not reasonably marketed hydrocarbons from the wells that are identified in its royalty statements that the Plaintiff receives from SPC.

83. The Plaintiff receives royalties from other operators, for hydrocarbons produced under the 2006 Lease from wells in the same area as those identified on SPC's royalty statements. The pricing on the hydrocarbons produced from these other wells is higher than SPC. *See,* Repsol Royalty Statement, **Exhibit F**.

84. While not conceding that any "deductions" are proper, SPC's royalty statements do not contain any field for the identification of "deductions" associated with transporting gas on interstate pipelines, which is reasonably believed to be the predominant marketplace for gas sales. *See,* Exhibit E.

85. It is averred that SPC is not attempting to sell hydrocarbons produced from the wells subject to the 2006 Leases in the interstate transportation marketplace.

86. It is reasonably believed and therefore averred that higher prices were and are reasonably available to SPC for the hydrocarbons produced from the Units for which SPC pays a royalty to the Plaintiff.

87. SPC did not sell hydrocarbons at these higher prices that were reasonably available and, therefore, it is averred that SPC breached its contractual obligation to market hydrocarbons under the 2006 Lease.

88.     The Plaintiff has been damaged by this breach because it has resulted in the underpayment of production royalties.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment in its favor and against Defendant SWN Production Company, LLC in an amount to be determined at trial, together with any and all other relief that this Honorable Court may award, including any applicable interest and fees.

**COUNT VI**
**Breach of Contract**
**(In the Alternative)**

89.     This Count is asserted without admitting or conceding that SPC may calculate or pay the royalty due to the Plaintiff by deducting any post-production costs or calculating a royalty at a sales point downstream of the wellhead. It is asserted in the alternative to Count IV.

90.     The Plaintiff incorporates by reference Paragraphs 1 through 88 as though set forth at length herein.

91.     The 2006 Lease is a contract between the Plaintiff and SPC.

92.     The 2006 Lease identifies the royalty due from SPC to the Plaintiff as being ". . . an amount equal to the current market value at the wellhead as and when produced of one-eighth (1/8th) of all oil, gas and the constituents thereof produced, saved, marketed and sold from the Leasehold." *See,* Exhibit A at ¶ 4(a)(ii).

93.     Paragraph 12 of the 2006 Lease addresses the Plaintiff's entitlement to royalties in the event the Leasehold (or part thereof) is pooled or unitized:

> Lessor shall, in lieu of the Royalty, accept and receive out of the revenue realized from the production associated with such drilling or production unit, the same proportion of the Royalty stipulated herein as the surface area of the Leasehold within such drilling or production unit is to the total surface area comprising such drilling or production unit.

*See,* Exhibit A at ¶ 12.

94. SPC pays a production royalty to the Plaintiff. *See,* Exhibit E.

95. The royalty that SPC pays to the Plaintiff contains a "price" and sets forth "deductions" from this price for activities such as "compression", "gathering" and "other". *See,* Exhibit E.

96. It is averred that this "price" is obtained downstream of the "wellhead" and is calculated based on "weighted average" price values.

97. It is averred that the purported "compression" and "gathering" deductions are associated with moving gas between a well and a downstream location, such as an actual sales point or the interstate pipeline network.

98. It is reasonably believed and therefore averred that the "compression" and "gathering" deductions set forth in the royalty statements that the Plaintiff receives from SPC do not account for the proximity between the actual well locations and either the purported sales location and/or the interstate pipeline network.

99. Upon information and belief, the Leasehold is in close proximity to the Tennessee Gas Pipeline, an interstate transmission pipeline.

100. It is therefore averred that the purported cost to move hydrocarbons from the Wells in the Units to the actual sales point and/or the interstate pipeline network should not be as great as costs from other wells that are further away.

101. Without admitting or conceding that any "deductions" are proper or that SPC may determine a price downstream of the wellhead under the 2006 Lease's "Royalty" provision, it is averred that SPC has nonetheless breached the 2006 Lease by deducting excessive, unrelated,

unreasonable and improper "compression" and "gathering" costs from the Plaintiff's production royalty.

102.   The 2006 Lease does not authorize the calculation of royalties using "weighted average" pricing or "weighted average" costs.

103.   To the extent that the 2006 Lease authorizes "deductions", which is not conceded or admitted and is expressly denied, the "deductions" set forth in the royalty statements from SPC are excessive and unreasonable, given the proximity of the Leasehold to the Tennessee Gas Pipeline and the marketplace located therein.

104.   Alternatively, to the extent that the 2006 Lease authorizes "deductions", which is not conceded or admitted and is expressly denied, the "deductions" set forth in the royalty statements from SPC are nonetheless improper to the extent they represent or consist of remote costs and/or expenses which are unrelated to the movement or treatment of the hydrocarbons produced from the Wells in the subject Units.

105.   The Plaintiff has been damaged by this breach because it has resulted in the underpayment of royalties.

WHEREFORE, the Plaintiff respectfully requests the entry of judgment in its favor and against Defendant SWN Production Company, LLC in an amount to be determined at trial, together with any and all other relief that this Honorable Court may award, including any applicable interest and fees.

## JURY DEMAND

106.   A jury trial is hereby demanded for each claim in this proceeding with is triable by jury.

Respectfully submitted,

Date: May 13, 2021

By: _____
Robert J. Burnett, Esq.
Pa. ID. No. 76734
Brendan A. O'Donnell, Esq.
Pa. ID. No. 309007
HOUSTON HARBAUGH, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
(412) 281-4499 (fax)
rburnett@hh-law.com
odonnellba@hh-law.com
*(Counsel for Plaintiff)*

## VERIFICATION

I, Beth A. Mulcahy, as Secretary/Treasurer of the Warner Valley Farm, LLC, hereby verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: 4/23 2021

Beth A. Mulcahy
Secretary/Treasurer

{CLIENT WORK/41809/0000 H1769669:1}

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.