# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARNER VALLEY FARM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-CV-01079 |
| | ) (Chief Judge Brann) |
| SWN PRODUCTION COMPANY, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## BRIEF IN SUPPORT OF
## REPSOL OIL & GAS USA, LLC'S MOTION TO INTERVENE

Repsol Oil & Gas USA, LLC ("Repsol") submits this Brief in support of its Motion to Intervene as a party defendant under Rule 24(a)(2) and Rule 24(b)(2).

## INTRODUCTION

In this oil and gas lease dispute, Warner Valley Farm, LLC, sued SWN Production Company, LLC, over whether the parties' lease authorizes drilling and operation of wells that cross into or through multiple production units ("cross-unit drilling"), whether the statutory authority for cross-unit drilling under Pennsylvania Act 85 of 2019 ("Act 85") is constitutional, and whether SWN has paid royalties in compliance with the lease. Repsol was not named as an original defendant but, through its predecessor-in-interest, is a party to the same lease that Warner Valley Farm and SWN seek to litigate here: an April 12, 2006 oil and gas lease originally between Wayne W. Warner and Reba Warner, as lessors, and Fortuna Energy, Inc.,

1

as lessee ("2006 Lease"). Repsol has moved to intervene in this action to protect its interests under the 2006 Lease and Act 85.

## PROCEDURAL HISTORY

Warner Valley Farm filed its Complaint in Civil Action against SWN in the Court of Common Pleas of Bradford County, Pennsylvania, Docket No. 2021-CV-0092, in May 2021. (ECF No. 1-1). SWN timely removed this action to this Court in June 2021, (ECF No. 1), and filed its answer and affirmative defenses in July 2021, (ECF No. 6). In August 2021, this Court entered a Case Management Order, (ECF No. 12), that, among other things, set a fact-discovery deadline of June 15, 2022, an expert-discovery deadline of October 14, 2022, a dispositive-motions deadline of October 31, 2022, and a trial date in the February 2023 trial list.

In May 2022, this Court amended its August 2021 Case Management Order to permit the parties to submit dispositive motions on Count III of the Complaint, pertaining to the constitutionality of Act 85, by no later than June 19, 2022, and extend the fact-discovery deadline to 120 days from the Court's resolution of any dispositive motions filed in accordance with its order. (ECF No. 17). The Court vacated all other deadlines from its August 2021 Case Management Order. (*Id.*). In June 2022, this Court amended its May 2022 Order to extend the deadline for filing dispositive motions on Count III of the Complaint to July 18, 2022. (ECF. No. 19).

Repsol is informed and believes that the Court has not made any substantive rulings in this action, the parties have yet to file any dispositive motions, and minimal, if any, discovery has taken place.

## STATEMENT OF FACTS

Among the issues that Warner Valley Farm and SWN identified for resolution in this action as part of their Joint Case Management Plan, (ECF No. 10), are:

a. Whether the 2006 Lease authorizes and permits the drilling and operation of cross-unit laterals (i.e., cross-unit drilling)?
b. Whether Act 85 is constitutional under the contracts clauses in Pennsylvania Constitution Article I § 1 and United States Constitution Article I § 10 ¶ 1?

Repsol is a Texas limited liability company that engages in upstream (exploration and production) and midstream oil and gas operations across the United States, including in the Marcellus Shale formation in Pennsylvania. Repsol is informed and believes that Warner Valley Farm is the successor-in-interest to Wayne W. Warner and Reba Warner, the original lessors under the 2006 Lease. (*See* Compl. ¶ 5). Talisman Energy USA Inc. is a successor-in-interest to Fortuna, the original lessor under the 2006 Lease. Repsol is a successor-in-interest to Talisman.

Under a February 9, 2011 Assignment of Oil and Gas Leases by and between Talisman (f/k/a Fortuna Energy), as assignor, and SWN, as assignee, ("2011 Assignment"), Talisman assigned SWN its interest in 34.904 acres of the 506.46 acres held under the 2006 Lease. Under a September 4, 2019 Assignment of Oil and

Gas Lease by and between Repsol, as assignor, and SWN, as assignee, ("2019 Assignment") Repsol assigned SWN its interest in an additional 242.15 acres of the 506.46 acres held under the 2006 Lease. (*See* Compl. ¶¶ 4 & 6, ECF No. 1-1). As a result of the 2011 Assignment and 2019 Assignment, SWN holds approximately 277 acres under the 2006 Lease ("SWN Acreage"). Repsol retains approximately 150 acres under the 2006 Lease ("Retained Acreage").

Repsol drilled, completed, and operates multiple producing wells, located in multiple units on the Retained Acreage. Warner Valley Farm described some of Repsol's operations in its Complaint in the present action. (*See* Compl. ¶¶ 7 & 9). The right to cross-unit drilling under the 2006 Lease and Act 85, which Warner Valley Farm challenges in its Complaint against SWN, is important to Repsol's operations. It makes Repsol's interest in the 2006 Lease more valuable and gives it additional operational flexibility that impacts how Repsol plans for future operations.

Repsol was not named as a defendant in the original Complaint and learned of this action only recently.

## STATEMENT OF QUESTIONS INVOVLED

1. Does Repsol have a right to intervene under Rule 24(a)(2) when it claims contractual and statutory rights under the 2006 Lease and Act 85 that are not

represented by a current party and has moved to intervene shortly after learning of this action and before significant litigation activity has taken place?

2. Should Repsol alternatively be permitted to intervene under Rule 24(b)(2) when it proposes to litigate common issues to the main action, involving the right to cross-unit drilling under the 2006 Lease and the constitutionality of Act 85, and moved to intervene shortly after learning of this action and before significant litigation activity has taken place?

## ARGUMENT

### A. Repsol has a right to intervene under Rule 24(a)(2).

Rule 24(a)(2) authorizes a non-party to intervene of right when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A non-party seeking intervention under this rule must satisfy four elements: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d

361, 365-66 (3d Cir. 1995) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). Repsol satisfies each of these four elements.

First, timeliness of an application is reviewed against three sub-elements: "(1) the stage of the proceedings reached when the applicant seeks to intervene; (2) the prejudice that the resulting delay might cause to other parties; and (3) the reason for the delay." *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 347 (M.D. Pa. 2013). Though this action was filed just over a year ago, Repsol learned of it only recently, and the litigation has not progressed beyond its infancy. The parties have not filed any dispositive motions, the Court has not issued any substantive rulings, and the parties are believed to have not conducted any meaningful discovery. The Court has in fact deferred the close of fact discovery until 120 days **after** it decides any dispositive motions on Count III of the Complaint. The existing parties are therefore unlikely to be prejudiced by the timing of Repsol's application. Repsol has satisfied the timeliness element.

Second, an applicant has a sufficient interest when it shows that it has "a legal interest as distinguished from interests of a general and indefinite character." *Harris*, 820 F.2d at 601 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980)). Repsol holds an interest in the same 2006 Lease that Warner Valley Farm seeks to construe and, as an exploration and production company operating in Pennsylvania, has statutory rights to cross-unit drilling under Act 85

6

that Warner Valley Farm seeks to invalidate as unconstitutional. In *Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*, 6 F. Supp. 2d 360, 363 (D.N.J. 1998), Michaels sued its commercial landlord to obtain a declaratory judgment that its operation of an arts-and-crafts store would not violate its lease's permissive-use clause, which prohibited uses that conflicted with or violated exclusive uses granted to other tenants in the shopping complex. Rag Shop moved to intervene on the grounds that it had the exclusive right to operate an arts-and-crafts store in the complex under its lease with the same commercial landlord. *Id.* at 364-365. Although Rag Shop did not have an interest in the lease at issue in the main action, the *Michaels* court found it nonetheless had a sufficient interest in enforcing the exclusivity clause under its own lease for intervention. *Id.* at 365. Repsol's interest here is even more tangible than the interest approved in *Michaels* because Warner Valley Farm challenges the **same** 2006 Lease and the **same** Act 85 under which Repsol claims contractual and statutory rights. "Interests in property are the most elementary type of right that Rule 24(a) is designed to protect" and a sufficient interest has commonly been found when there is a readily identifiable interest in land." *Mountain Top Condominium Ass'n*, 72 F.3d at 367 (quoting 7C Wright & Miller, *Fed. Practice & Procedure* § 1908)). Here, Repsol has an existing property interest in the specific leasehold at issue. Repsol therefore satisfies the sufficient-interest element.

Third, an applicant shows its interest may be affected or impaired by the action's disposition if it "demonstrate[s] that there is a tangible threat to a legally cognizable interest." *Harris*, 820 F.2d at 601. "[T]he Court is not limited to consequences of a strictly legal nature … [but] may consider any significant legal effect on the applicant's interest …." *Id.* (ellipses and second alteration in original) (quoting *Nat'l Res. Def. Council, Inc. v. United States Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). Within the Third Circuit there is a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Kleisser v. U.S. Forest Serv.*, 157 F.3d 954, 970 (3d Cir. 1998) (citation omitted). Courts accordingly have found this impairment element to be satisfied "when the action will have a significant *stare decisis* effect on the applicant's rights or where the contractual rights of the applicant may be affected by a proposed remedy." *Id.* (internal citations omitted). In *Little Rock School District v. Pulaski County Special School District No. 1*, 738 F.2d 82 (8th Cir. 1984) (per curiam), and *Equal Employment Opportunity Commission v. American Telephone & Telegraph Co.*, 506 F.2d 735 (3d Cir. 1974), for instance, federal courts of appeals reversed orders denying intervention because the main actions had the potential to affect the applicants' rights under collective bargaining agreements. In *Corby Recreation, Inc. v. General Electric Co.*, 581 F.2d 175 (8th Cir. 1978), the Eighth Circuit likewise reversed an order denying intervention

8

because the applicant, who owned a building damaged by fire, might have been prejudiced by the "inhibiting effect of Stare [sic] decisis" from disposition of the main action brought by its tenant against the party allegedly responsible for the damage. And in *Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1981), the Ninth Circuit overruled an order denying the United States Attorney General intervention because construction of a Northern Marianas statute in the main action might have had stare decisis implications for an identically worded statute enforced by the Attorney General. The potential for disposition of this action to affect or impair Repsol's interests here is as great or greater than in those cases, again because Warner Valley Farm seeks to construe the **same** 2006 Lease and the **same** Act 85 under which Repsol claims contractual and statutory rights. Specifically, the outcome of this case would impact Repsol's ability to conduct its operations under the 2006 Lease. Repsol therefore satisfies the practical-impairment element.

Fourth, and finally, inadequate representation can be shown under any one of three circumstances: "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Corbett*, 296 F.R.D. at 349. This burden is "not onerous" and requires only that the representation **may** be inadequate rather than

9

that it is inadequate in fact. *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009); *accord Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."). The Third Circuit, for instance, has held that applicants were not adequately represented in a dispute involving insurance proceeds when the applicants alone desired the proceeds to be overseen by an independent trustee. *Mountain Top Condominium Ass'n*, 72 F.3d at 369. It has also held that existing representation was inadequate when the applicant intended to raise a contractual defense that was not available to the party with which it was aligned. *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 163 (3d Cir. 1995). In *Michaels*, 6 F. Supp. 2d at 365, the court held under similar circumstances to these that a landlord did not adequately represent the interests of the applicant, its commercial tenant, because they faced different consequences from an adverse decision. And this Court has held in a case involving a governmental party, where an applicant must overcome a presumption of adequacy, that an applicant's specific, parochial interests will satisfy its burden on this fourth element. *Am. Farm Bur. Fed. v. U.S. E.P.A.*, 278 F.R.D. 98, 109-110 (M.D. Pa. 2011). Repsol's circumstances are analogous because, although nominally aligned with SWN, it represents an entirely different legal interest under the 2006 Lease in that Repsol and SWN independently

operate their interests thereunder, including forming and maintaining wholly separate oil and gas units, drilling independently operated oil and gas wells, and issuing wholly separate royalty statements to Plaintiff. Accordingly, because Repsol and SWN operate completely independently of each other and have separate, albeit related, business interests in the 2006 Lease, Repsol has therefore satisfied the inadequate-representation element.

For these reasons, this Court should enter an Order granting Repsol intervention of right under Rule 24(a)(2).

## B. Repsol alternatively should be permitted to intervene under Rule 24(b)(2).

Rule 24(b)(2) authorizes the Court to permit intervention by any party with a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts also consider "whether the proposed intervenors will add anything to the litigation." *Am. Farm Bureau Fed.*, 278 F.R.D. at 111. In *Berman v. Herrick*, 30 F.R.D. 9, 10-11 & 13 (E.D. Pa. 1962), the court approved permissive intervention because the applicants were contractors and materialmen whose claims against a property owner arose out of the same project and would be litigated more efficiently together. In *Pike Company, Inc. v. Universal Concrete Products, Inc.*, 284 F. Supp. 3d 376, 396 (W.D.N.Y. 2018), the

court granted Marist College permissive intervention in a dispute between the prime contractor and subcontractor on a construction project for the college, finding that the claims were founded on the same contract and involved common questions of law and fact on the parties' responsibilities. And in *Louis Berger Group, Inc. v. State Bank of India*, 802 F. Supp. 2d 482 (S.D.N.Y. 2011), the court granted a contractor permissive intervention, after denying intervention of right, where the contractor intended to litigate common questions of law and fact concerning the validity of letters of credit on which the plaintiff had made claims.

In the alternative to intervention of right under Rule 24(a)(2), Repsol satisfies the requirements for permissive intervention under Rule 24(b)(2). First, like the parties in the cases cited above, which sought to litigate the same contract or same project as in the main action, Repsol intends through its pleading in intervention to litigate the same 2006 Lease and same Act 85 at issue in the main action and seek declaration on a subset of the same legal issues, such as those relating to contractual and statutory rights to engage in cross-unit drilling under the 2006 Lease and Act 85. Second, intervention is unlikely to delay or prejudice the existing parties because, as discussed above, this action is in its infancy. There have been no substantive rulings, no dispositive-motions filings, and no significant discovery proceedings. Third, and finally, Repsol's participation contributes to the fair and efficient resolution of this action by ensuring that the entirety of the leasehold is

adjudicated at one time, by adding context, as the party through which SWN acquired its interest under the 2006 Lease, and by adding perspective, as a different operator producing from distinct acreage under the 2006 Lease.

For these reasons, this Court should, in the alternative to the relief sought under Rule 24(a)(2), enter an Order granting Repsol intervention under Rule 24(b)(2).

C.  **Repsol has met the requirements under Rule 24(c) and L.R. 7.1.**

Under Rule 24(c), an application for intervention must be "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Under Local Rule 7.1, all motions must be accompanied by a certificate of concurrence and a proposed Order. L.R. 7.1. Repsol has met each of these requirements in the body of its Motion to Intervene or in attachments thereto.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons and those apparent to the Court, Repsol Oil & Gas USA, LLC, requests that the Court enter an Order granting its Motion to Intervene, joining it to this action as a party defendant, directing it to file its Answer, Affirmative Defenses, and Counterclaim, and granting such other relief as the Court deems just and proper.

**Dated**: July 14, 2022    **Repsol Oil & Gas USA, LLC**

/s/ Joseph V. Schaeffer

Mark K. Dausch, Esquire
PA ID No. 205621
mdausch@babstcalland.com
Joseph V. Schaeffer, Esquire
PA ID No. 323256
jschaeffer@babstcalland.com
BABST, CALLAND, CLEMENTS &
ZOMNIR, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5655 – Phone
(412) 394-6576 – Facsimile