**Exhibit A**

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WARNER VALLEY FARM, LLC,

                             Plaintiff,                    No. 4:21-CV-01079

                                                           Chief Judge Brann

          vs.

SWN PRODUCTION COMPANY, LLC,

                             Defendant.

_____

## BRIEF OF *AMICUS CURIAE* THE MARCELLUS SHALE COALITION SUPPORTING DEFENDANT SWN PRODUCTION COMPANY, LLC

_____

Terry R. Bossert (PA 17670)
General Counsel
Marcellus Shale Coalition
300 North Second St, Suite 1102
Harrisburg, PA 17101
*Counsel for Amicus Curiae MSC*

# **TABLE OF CONTENTS**

I.      PROCEDURAL HISTORY ………………………………………1

II.     INTERESTS OF *AMICUS CURIAE* …………………………………...1

III.    ARGUMENT …………………………………………………………2

        A.    Act 85 Complements the Pooling or Unitization Clauses
              Routinely Found in Oil and Gas Leases……………………..2

        B.    Act 85 is Not an Unconstitutional Impairment of Contract…5

IV.     CONCLUSION …………………………………………………….9

# TABLE OF AUTHORITIES

## Cases

*Amoco Production Co. v. Heimann,* 904 F.2d 1405, 1990 U.S. App. LEXIS 5098 (10th Cir. 1990) …………………………………………………………...3,7

*Ass'n of Settlement Cos. v. Dep't of Banking*, 977 A.2d 1257, 2009 Pa. Commw. LEXIS 768 (Pa Commw. 2009)...........................................................................6

*Brown v. Haight*, 255 A.2d 508, 510-11 (Pa. 1969) …………………………7

*General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S. Ct. 1105, 1109-1110 (1992 ......................................................................................................5

*Heffner v. Murphy,* 745 F.3d 56, 65, 2014 U.S. App. LEXIS 2970 (3rd Cir. 2014)..6

*Jacobs v. CNG Transmission Corp*., 332 F. Supp. 2d 759, 2004 U.S. Dist. LEXIS 16775 (W.D. Pa. 2004) …………………………………………………….7

*Neuhard v. Range Resources-Appalachia, LLC,* 29 F. Supp. 3d 461, 470, 2014 U.S. Dist. LEXIS 59602 **18 ........................................................................3

*Nolt v. TS Calkins & Assocs., LP*, 96 A.3d 1042, 2014 Pa. Super. LEXIS 1775, (Pa. Super. 2014) …………………………………………………………….7

*Pennsylvanians Against Gambling Expansion (P.A.G.E.) Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383, (Pa. 2005) ……………………… 6

*Penn-Ohio Gas Co. v. Franks's Heirs*, 185 A. 280 (Pa. 1936) …………. ……….7

*South Union Township v. Commonwealth, Department of Environ. Protection, 839 A.2d 1179, 2003 Pa. Commw. LEXIS 926 (Pa. Cmwlth. 2003)* ……………....5

**Constitutional Provisions**

U. S. Const., art. I, §10 ………………………………………… ……………1

Pa. Const., art. I, § 17

…………………………………………………………………………………1

**Statutes**

Act of Nov. 7, 2019 (P. L. 634, No. 85) (Act 85)………………………… *passim*

## I.    PROCEDURAL HISTORY

This action involves a dispute over pooling and unitization rights and royalty obligations under an April 12, 2006 oil and gas lease (2006 Lease).  Warner Valley Farm, LLC initiated this breach of contract action against SWN Production Company, LLC to construe that 2006 Lease and obtain a declaration that an act of the Pennsylvania General Assembly is unconstitutional under Article I, § 10 of the United States Constitution and Article I, § 17 of the Pennsylvania Constitution. (ECF 1, Attachment 1)  The Plaintiff's complaint, in Count III, challenges the constitutionality of the Act of Nov. 7, 2019 (P. L. 634, No. 85) codified at 58 P.S. § 34.2 (hereinafter Act 85).  By Order dated May 19, 2022, (ECF 17) the Court authorized the parties to file dispositive motions regarding the legal issues set forth in Count III of the Complaint.

## II.    INTEREST OF AMICUS CURIAE[1]

The MSC is a regional trade association that represents the interest of companies engaged in the exploration for and production, processing, and

---

[1] No person or entity other than the *amicus curiae*, its members, or its counsel either paid in whole or in part for the preparation of the *amici's* brief or authored in whole or in part the *amici's* brief.

transportation of natural gas.  MSC members produce gas primarily from

"unconventional" shale formations by use of horizontal drilling.  The MSC and its

members participated in the discussions that lead to the enactment of Act 85,

noting the advantages of cross-unit drilling for efficient recovery of the resource as

well as the community and environmental benefits that are realized from cross-unit

drilling.  The MSC is very cognizant of impairment of contract claims, having

faced other legislative efforts that would have implicated that issue.

### III.   ARGUMENT

A. Act 85 Complements the Pooling or Unitization Clauses Routinely
   Found in Oil and Gas Leases.

Act 85[2] enhances the benefits realized by pooling or unitization.   Pooling or

unitization are common practice in the industry, involving the consolidation of

several leasehold interests into one production unit.[3]  See, *Neuhard v. Range*

---

[2] Act 85 provides as follows:
(a) General rule. —If an operator has the right to drill an oil or gas well on separate
units, the operator may drill and produce a well that traverses, by horizontal
drilling, more than one unit, if:
(1) The operator reasonably allocates production from the well to or among each
unit the operator reasonably determines to be attributable to each unit. The operator
may allocate production on an acreage basis for multiple units provided the
allocation has a reasonable correlation to the portion of the horizontal well bore in
each unit.
(2) The traversing well is not expressly prohibited by the terms of a lease.

[3] Although pooling and unitization have slightly different meanings, they are often
used interchangeably.  See, 6-9 WILLIAMS & MEYERS, OIL AND GAS LAW §
901.  The terms are used interchangeably in this brief.

*Resources-Appalachia, LLC,* 29 F. Supp. 3d 461, 470, 2014 U.S. Dist. LEXIS

59602 **18  (M.D. Pa. 2014) (Citing *Amoco Production Co. v. Heimann,* 904 F.2d

1405, 1990 U.S. App. LEXIS 5098, 10th Cir. 1990). It is generally recognized that

unitization serves to maximize production, prevent waste, and protect the

correlative rights of landowners.  *Id*.  Although pooling and unitization clauses in

leases pre-date the production of gas from shale formations in Pennsylvania by

many years, when combined with the horizontal drilling technology used to access

shale resources, pooling produces significant benefits for the community, the

landowner, and the environment.  The combination enables one well pad, housing

multiple wells, to access hundreds of acres of subsurface area and extract the gas

from that area.  Pooling and unitization avoid a proliferation of wells and the

accompanying surface impacts. [4]

    In order to prepare a site for the drilling of an unconventional well, a well

pad, usually several acres in size, must be constructed by leveling an area and

---

[4] "… the combination of hydraulic stimulation and horizontal drilling applied to
multiwell drilling pads, while increasing production, also results in smaller per-
well environmental impacts when compared to multiple individual vertical wells.
Multilateral drilling takes this one step further – by drilling multiple horizontal
wells from the same well. With these advancements, the size of industry's
footprint, in terms of land use per unit of energy extracted, has been dramatically
reduced. "U.S. Oil and Natural Gas" p. 31, U.S. Dept. of Energy.  Accessed at
https://www.energy.gov/sites/prod/files/2020/10/f79/Natural%20Gas%20Benefits
%20Report.pdf.  Last visited Aug. 4, 2022.

providing a stone base strong enough to hold the equipment required for the drilling and completion equipment.  In addition, an access road leading from the nearest public road must be constructed and a pipeline to gather the produced natural gas must be installed.  Storm water and erosion control facilities required by state law must be installed occupying additional area.  Naturally, installing these facilities requires a certain amount of necessary surface disturbance.  During construction there will be construction vehicle traffic to each location and thereafter it is necessary to move equipment on and off the site during the various phases of operations.  It is also likely that construction of an access road or installation of a pipeline will result in the need to cross under or over a stream and perhaps bordering wetlands.[5]  Obviously, building fewer well pads, fewer access roads, and fewer pipelines while accessing a larger subsurface area means fewer individual properties with surface disturbance, fewer streams to cross, less construction, and less traffic.  These benefits flow from the combination of unitization and horizontal drilling.

Many early Marcellus wells had lateral lengths ranging from 2500 feet to 4000 feet.  Accordingly, units were designed to cover the area that could be

---

[5] Pennsylvania has over 85,500 miles of streams.  "2020 Integrated Water Quality Monitoring and Assessment Report  https://gis.dep.pa.gov/IRStorymap2020/.  Last visited Aug. 4, 2022.

reached by horizontal laterals of that length.  More recent advances in drilling technology have allowed laterals to be extended to as much a two miles or more[6]. By authorizing cross-unit wells, lease provisions as well as Act 85 allow two or more of these historically smaller units to be accessed by one well greatly enhancing the benefits of unitization and horizontal drilling and greatly expanding the area left undisturbed.[7]

### B. Act 85 is Not an Unconstitutional Impairment of Contract

Determining whether a statute impairs contracts requires the analysis of three issues: (1) whether there is a contractual relationship; (2) whether the law impairs that contractual relationship; and (3) whether any impairment is substantial.  *South Union Township v. Commonwealth, Department of Environ. Protection, 839 A.2d 1179, 1188-1189, 2003 Pa. Commw. LEXIS 926 **17 (Pa. Cmwlth. 2003)*; *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S. Ct. 1105, 1109-1110, 1992 U.S. LEXIS 1535****10-11 (1992). Whether Act 85 impairs a contract (lease) and whether any impairment is substantial can only be determined by examining the terms of each individual lease. Lease terms vary

---

[6] Pittsburgh Business Journal, April 27, 2018. https://www.bizjournals.com/pittsburgh/news/2018/04/27/heres-how-long-eqt-range-are-now-reporting-lateral.html.  Last visited Aug. 4, 2022.

[7] Act 85 provides the collateral benefit of making it clear that the Department of Environmental Resources may issue a permit for a well that crosses two or more units, providing regulatory clarity for the Department and the industry.

widely and the pooling or unitization clauses vary as well.  Thus it cannot be

concluded that Act 85 is <u>facially</u> unconstitutional.  See *Heffner v. Murphy,* 745

F.3d 56, 65, 2014 U.S. App. LEXIS 2970 (3rd Cir. 2014) (The party asserting a

facial challenge must establish that no set of circumstances exist under which the

act would be valid.)

To the extent that Plaintiff asserts that Act 85 impairs individual leases, it

must overcome a significant hurdle.  The party challenging the constitutionality of

a statute bears a heavy burden to overcome the presumption that legislation does

not violate the constitution.  *Ass'n of Settlement Cos. v. Dep't of Banking*, 977 A.2d

1257, 1261, 2009 Pa. Commw. LEXIS 768**3 (Pa Commw. 2009), citing

*Pennsylvanians Against Gambling Expansion (P.A.G.E.) Fund, Inc. v.*

*Commonwealth*, 583 Pa. 275, 292, 877 A. 2d 383, 393, 2005 Pa. LEXIS

1318***11-12 (Pa. 2005).  A statute will not be declared unconstitutional unless it

clearly, palpably, and plainly violates the constitution.  *Id.*  Since Act 85 does not

impair the terms of any lease it cannot be shown to violate the United States or

Pennsylvania Constitutions clearly, palpably, and plainly.

If a lease prohibits cross-unit drilling, Act 85 does not override that

prohibition.  If there is no prohibition, Act 85 does not grant any new authority.

The lessee already has that right.  The typical granting or leasing clauses that use

terms like "grant" or "convey" and describe the interest granted as "all oil and gas"

6

convey to the lessee a fee simple determinable ownership in the gas. *See Brown v. Haight*, 255 A.2d 508, 510 -511, 969 Pa. LEXIS 681 (Pa. 1969); *Penn-Ohio Gas Co. v. Franks's Heirs*, 185 A. 280, 280-82, 1936 Pa. LEXIS 789 (Pa. 1936); Nolt *v. TS Calkins & Assocs., LP*, 96 A.3d 1042, 2014 Pa. Super. LEXIS 1775, (Pa. Super. 2014); *Jacobs v. CNG Transmission Corp*., 332 F. Supp. 2d 759, 772-774, 2004 U.S. Dist. LEXIS 16775***31-33 (W.D. Pa. 2004). As the fee owner of the gas, the lessee has the right to develop and produce the gas as it sees fit without any additional permission from the lessor, unless specifically restricted by lease terms. Act 85 merely references a right the lessee already has. Likewise, Act 85 does not change the royalty clause in the typical lease. Pursuant to the usual unitization clauses, the royalty payment is based on an allocation formula set out in the lease. Often that allocation is based on the amount of surface area a particular tract has within the unit -- as the 2006 Lease does. Allocation of production within a unit is not an exact science and represents a convenient way to assign production that cannot be determined precisely on a per property basis. The allocation is only an estimate of the production contributed to the unit by a particular well. However, a royalty owner will obtain a pro rata share of the production regardless of whether the production is from its land or another tract in the unit. *See Amoco Production Co. v. Heimann* at 1411. Lessors accept these allocations when they accept a pooling or unitization clause. Act 85 does not authorize the operator to

make any change to the allocation formula <u>within</u> a unit.  Accordingly, as in the case of the 2006 Lease for example, the lessor is still paid from "the revenue realized from the production associated with such unit." (2006 Lease, para. 12, Exhibit A to Plaintiff's Complaint) (ECF 1, Attachment 1)

Act 85 allows the operator to allocate production between or among units in order to determine the production associated with each unit.   However, that allocation methodology is no different than the allocation of production made within a unit.  In the case of a cross-unit well extending into two units, the royalty owner may obtain a pro rata share of the production regardless of whether the production is from its land or another tract in the unit or another tract in <u>another</u> unit.  Moreover, Act 85 adds additional safeguards that may not be found in a lease. The allocation between or among cross-drilled units must be reasonable, and if the commonly used acreage area formula is used, it must bear a reasonable relationship to the portion of the well in each unit.  *See* 58 P.S. §32.4 (a)(1).  Thus, one or more of the lessors in a unit may challenge the amount of production allocated to their unit if they feel the amount is unreasonable generally or unreasonable in relation to the portion of the well within their unit.  Rather than impairing a lease, Act 85 provides lessors with the benefit of sharing in the production from a larger unit and the additional protections of the reasonableness standard.

**CONCLUSION**

For the reasons discussed, Act 85 does not clearly, palpably, and plainly violate the Constitution of either the United States or Pennsylvania.

Respectfully submitted,

MARCELLUS SHALE COALITION

/s Terry R. Bossert
Terry R. Bossert (PA 17670)
General Counsel
300 North Second St, Suite 1102
Harrisburg, PA 17101
Counsel for MSC

# CERTIFICATE OF SERVICE

I certify that, on August 8, 2022, I filed the attached document with the

Court's CM/ECF system such that the following should receive service

automatically:

Robert J. Burnett, Esq.              David R. Fine
Brendan A. O'Donnell, Esq.           K&L Gates
Houston Harbaugh, P.C.               Market Square Plaza
401 Liberty Avenue                   17 North Second Street, 18th Floor
Three Gateway Center, 22nd Floor     Harrisburg, PA 17101
Pittsburgh, PA 15222


/s/ Terry R. Bossert