# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WARNER VALLEY FARM, LLC,

           Plaintiff,           No. 4:21-CV-01079

                                   Chief Judge Brann

vs.

SWN PRODUCTION COMPANY, LLC,

           Defendant.

## BRIEF IN SUPPORT OF MOTION OF THE MARCELLUS SHALE COALITION FOR LEAVE TO FILE A BRIEF AS *AMICUS CURIAE*

PROCEDURAL HISTORY

    This action involves a dispute over pooling and unitization rights and royalty obligations under an April 12, 2006 oil and gas lease. Warner Valley Farm, LLC initiated this action against SWN Production Company, LLC to construe that 2006 Lease and obtain a declaration that an act of the Pennsylvania General Assembly is unconstitutional under Article I, § 10 of the United States Constitution and Article I, § 17 of the Pennsylvania Constitution. The Plaintiff's complaint, in Count III, challenges the constitutionality of the Act of Nov. 7, 2019 (P. L. 634, No. 85), codified at 58 P.S. § 34.2, (hereinafter Act 85). Act 85 provides statutory authority for oil and gas operators to drill and produce from wells that traverse more than one production unit, often referred to as cross-unit wells. Plaintiff asserts that Act

1

85 creates an impairment of contract in violation of the United States and Pennsylvania constitutions. By Order dated May 19, 2022, the Court authorized the parties to file dispositive motions regarding the legal issues set forth in Count III of the Complaint. (ECF 17). The Marcellus Shale Coalition (MSC) has filed a motion seeking permission to file an amicus brief limited to the legal issues relating to the constitutionality of Act 85. The Plaintiff opposes the motion. The Defendant has concurred in the relief requested.

STATEMENT OF FACTS[1]

The MSC is a regional trade association that represents the interest of companies engaged in the exploration for and production, processing, and transportation of natural gas. MSC members produce gas primarily form "unconventional" shale formations by use of horizontal drilling. MSC members extract approximately 95% of the natural gas produced from unconventional formations in Pennsylvania.

The MSC often advocates in the Pennsylvania General Assembly and before federal and state administrative agencies for changes in laws and regulations relating to oil and gas operations necessary to reflect changing technology in the industry and in particular the technology relating to horizontal drilling. The MSC

---

[1] The MSC also incorporates by reference the facts set forth in the Motion filed along with this brief.

has participated as *amicus curiae* in matters pending in the courts of the United States and Commonwealth of Pennsylvania, including both the United States and Pennsylvania Supreme Courts.

The MSC and its members were actively involved in the discussions that lead to the enactment of Act 85, noting the advantages of cross-unit drilling for efficient recovery of the resource as well as the community and environmental benefits that are realized from cross-unit drilling.  The MSC is very cognizant of impairment of contract claims, having faced other legislative efforts that would have implicated that issue.  Thus, the MSC and its members also worked to craft Act 85 to avoid impairment of contract issues and have an interest in explaining why they were successful in that effort.

STATEMENT OF THE QUESTION

Should the Marcellus Shale Coalition be granted leave to file a brief as amicus curiae with respect to legal issues raised in Count III of Plaintiff's Complaint consistent with the Court's Order of May 19, 2022?

Suggested Answer:  Yes.

ARGUMENT

It is well established that there is no procedural rule directly applicable to a request to participate as an *amicus curiae* in the District Court.  Rather, the court has the inherent authority to allow amicus participation. *Avelino v. Heron*, 991 F.

Supp. 730, 732, 1998 U.S. Dist. LEXIS 2019 \*\*4 (E.D. Pa. 1998).  The decision whether *amicus curiae* should be permitted to participate is committed to the broad discretion of the district court. *Waste Mgmt. Inc. v. City of York*, 162 F.R.D. 34, 36, 1995 U.S. Dist. LEXIS 13729\*\*4 (M.D. Pa. 1995) (Citations omitted).  See also, *Behar v. Pa. DOT*, 791 F. Supp. 2d 383, 389, 2011 U.S. Dist. LEXIS 34615\*\*5 (fn 1) (M.D. Pa. 2011).  A court may grant leave to appear as *amicus* if the information offered is timely and relevant.  *Waste Mgmt.* at 36, \*\*4.

The MSC through its members were actively involved in the evolution of Act 85 from its initial form through its final version.  Accordingly, they have a unique perspective on how the act was structured to avoid the constitutional impairment of contract issues.  The MSC is in a position to share that perspective which may contribute to the court's understanding of Act 85.  Providing a perspective that may contribute to the court's understanding of Act 85 is a valid reason to allow the MSC's participation.  *Avellino* at 732, citing *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987) ("permitting persons to appear in court . . . as friends of the court . . . may be advisable where third parties can contribute to a court's understanding"). There is no rule that an amicus party must be impartial.  *Waste Mgmt*. at 37.

Of course, the court's discretion must be exercised in light of the particular circumstances and posture of a case and the nature of the proposed *amicus*

4

participation. The MSC acknowledges that some cases suggest that it is inappropriate to allow for *amicus* participation at the district court level where there are issues of fact as well as issues of law to be addressed. However, those cases are inapposite here as the MCS is not seeking to address any disputed factual issues. Here the MSC is taking no position on any aspect of the case other than the narrow issue framed by the Court's May 19, 2022 Order.

Some opinions also have cited to *Sciotto ex rel. Sciotto v. Marple Newtown Sch. Dist.,* 70 F. Supp. 2d 553, 1999 U.S. Dist. LEXIS 15750 (E.D. Pa. 1999) when discussing *amicus* participation. It is important to note that, unlike here, the entity seeking *amicus* status there wished to participate in the trial. In light of the entity's desire to participate in the trial it is not surprising that the criteria used by the court sounded more like the criteria for intervention than for mere *amicus* participation. Moreover it is respectfully suggested that the *Sciotto* court's reasoning is inconsistent with both the status of this case and the more recent guidance from the Third Circuit.[2]

The MSC's participation, given the posture of the case, would be very similar to *amicus* participation in an appellate proceeding where *amicus* briefs are routinely accepted if the moving party has an interest in the matter, the offered

---

[2] In addition of course, this Court is not bound by the Eastern District's decisions, which tend to be less accepting of *amicus* participation.

information is relevant and receiving it may be desirable.  It is appropriate to look for guidance to the Third Circuit's application of Rule 29 of the Federal Rules of Appellate Procedure.  See *United States v. Alkaabi*, 223 F. Supp. 2d 583, 592, 2002 U.S. Dist. LEXIS 17762 **23-24 (D. N.J. 2002) ("Although there is no rule governing the appearance of an *amicus curiae* in the United States District Courts, the Third Circuit's application of Fed. R. App. P. 29, which governs the appearance of *amici* in the United States Courts of Appeals, provides guidance to this Court").  Justice Alito, writing as a then- Circuit Court Judge, offered some insightful observations regarding the appropriate approach to *amicus* requests.  Neonatology Assocs., P.A. v. Comm'r, 293 F.3d 128, 131-134, 2002 U.S. App. LEXIS 10033** 6-15 (3d Cir. 2002).  Justice Alito rejects many of the criteria set out in *Sciotto*.  In particular, he rejects the idea that one seeking *amicus* status must show that a party is inadequately represented as being both impractical and undesirable, noting that even in the case of well represented parties an *amicus* brief may provide background or explain the impact of a potential holding on an industry. *Neonatology Assocs*. at 132, **10-12.  Justice Alito further notes that it is preferable to err on the side of granting relief, since the court can, without much inconvenience, determine whether to disregard the *amicus* brief if not helpful or benefit from it if it is helpful.  *Neonatology Assocs*. at 133, **13.

More than two years have passed since the effective date of Act 85 and MSC members have relied on the provisions of Act 85 having drilled hundreds of cross unit wells and paid royalties for the production from those wells. Those wells were drilled pursuant to a variety of lease forms with varying language regarding royalty payments, unitization, and pooling, often differing from the lease at issue here. The MSC and its members had a significant role in shaping Act 85 and seeking to avoid the very issue now before the Court. The Court's decision will certainly have ramifications throughout the industry, not to mention the landowners benefiting from the extension of cross-unit wells into areas not previously accessed. Accordingly, the MSC has a special interest in this issue, the information it offers is relevant to the court's consideration and it may be seen as desirable to have the broader implications of any decision addressed by the MSC. *Neonatology Assocs.* at 133, \*\*13.

The MSC respectfully request that the Court exercise its broad discretion and grant its Motion.

> Respectfully submitted,
>
> MARCELLUS SHALE COALITION
> /s Terry R. Bossert
> Terry R. Bossert (PA 17670)
> General Counsel
> 300 North Second St, Suite 1102
> Harrisburg, PA 17101
> Counsel for MSC

## CERTIFICATE OF SERVICE

I certify that, on August 8, 2022, I filed the attached document with the Court's CM/ECF system such that the following should receive service automatically:

Robert J. Burnett, Esq.
Brendan A. O'Donnell, Esq.
Houston Harbaugh, P.C.
401 Liberty Avenue
Three Gateway Center, 22nd Floor
Pittsburgh, PA 15222

David R. Fine
Market Square Plaza
17 North Second Street, 18th Floor
Harrisburg, PA 17101(717) 231-4500 david.fine@klgates.co

/s/ Terry R. Bossert