# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARNER VALLEY FARM, LLC, | : | No. 4:21-CV-01079 |
| Plaintiff, | : | Chief Judge Brann |
| *vs.* | : | [Filed by ECF] |
| SWN PRODUCTION COMPANY, LLC, | : | |
| Defendant. | : | |

**AMENDED STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF DEFENDANT SWN PRODUCTION COMPANY, LLC**

Pursuant to M.D. Pa. LR 56.1, Defendant SWN Production Company, LLC ("SWN") files this amended statement of material facts.

**I.  Lease Interests**

1. On April 12, 2006, Wayne W. Warner and Reba Warner (as lessors) and Fortuna Energy, Inc. (as lessee), entered into an oil and gas lease, a copy of which is attached to the complaint ("Complaint" or "Compl.") at Exhibit "A". *See* Compl., Exhibit A (ECF No. 1-1); *see also* Compl., ¶3; Answer of Defendant SWN Production Company, LLC ("Answer"), ¶3.[1]

2. The lease covers 506.46 acres of property in Pike and Stevens Townships, Bradford County, Pennsylvania (the "Leasehold"). *See* Compl., ¶4.

---

[1] SWN cites the complaint for a number of these statements, but it does not concede that all of the factual allegations in the complaint are accurate. It cites them because, even if the facts were as Warner portrays them, SWN would be entitled to summary judgment on Count III's constitutional claim.

3. Plaintiff Warner Valley Farm LLC ("Warner") is a successor-lessee-in-interest to the lease. *See* Compl., Exhibit B; *see also* Compl., ¶5.

4. SWN is a successor-lessee-in-interest to the lease. *See* Compl., Exhibit C; *see also* Compl., ¶6.

## II. Relevant Lease Provisions

5. The lease includes a number of relevant provisions.

6. For example, in its leasing clause, the lease grants to the lessees exclusive right to drill and produce from Warner's property using techniques "not restricted to current technology." Complaint, Exhibit A, ¶ 1.

7. The lease allows the lessees broad rights to exercise its sole discretion to include Warner's property in a unit (or units). Complaint, Exhibit A, ¶ 12.

8. The lease allows properties to be unitized with one another even if they are not contiguous. *Id.*

9. The lease allows SWN (or any other lessee) the right to change the size, shape and conditions of any unit created under the lease. *Id.*

## III. Activity Pursuant to the Lease

10. The lease has been unitized with other property to form a number of drilling units. *See* Compl., ¶7; *see also* Answer, ¶7.

11. SWN created two of those drilling units: Campbell Ercole Demento North and Chamberlin Meyer North (the "SWN Production Units"). *See* Compl., ¶8; *see also* Answer, ¶8.

12. Before SWN began development in the units that include the Warner property, SWN's reservoir engineer reviewed the area and determined that the likely

2

production from any of the units standing alone would not be sufficient to justify the capital expenditure to drill separate wells on each unit.[2]

13.     Thus, SWN determined that the only economically viable way to develop those units would be by means of cross-unit wellbores.[3]

14.     Development using cross-unit wellbores is more efficient and cost-effective since it allows the producer to construct just one well pad and drill just one vertical wellbore rather than having separate well pads and vertical wellbores on each unit.[4]

15.     Without the ability to drill a cross-unit wellbore, SWN would not have developed wells on the units of which Warner's property is a part.[5]

16.     Some gas wells in the SWN Production Units contain cross-unit laterals, meaning that the horizontal laterals of some gas wells cross beyond the boundary of a single production unit and extend into more than one production unit (the "Cross-Unit Wells"). *See* Compl., ¶¶10–11; *see also* Answer, ¶¶10–11.

17.     SWN is the operator of the Cross-Unit Wells. *See* Compl., ¶12; *see also* Answer, ¶12.

18.     SWN pays Warner Valley royalties pursuant to the lease for Production for production from the Cross-Unit Wells. *See* Compl, ¶¶13–14; *see also* Answer, ¶¶13–14.

---

[2] Declaration of Michael K. Bishop at ¶ 6 (attached at Tab "B").

[3] *Id.* at ¶¶ 7, 8.

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶ 8.

## IV. Pennsylvania Act 85 of 2019 and Constitutional Provisions

19. Pennsylvania Act 85 of 2019 amended the act of July 20, 1979 (P.L. 183, No. 60), known as the Oil and Gas Lease Act, to state:

Section 2.2. Cross-unit drilling for unconventional wells.

(a) General rule.—If an operator has the right to drill an oil or gas well on separate units, the operator may drill and produce a well that traverses, by horizontal drilling, more than one unit, if:
(1) The operator reasonably allocates production from the well to or among each unit the operator reasonably determines to be attributable to each unit. The operator may allocate production on an acreage basis for multiple units provided the allocation has a reasonable correlation to the portion of the horizontal well bore in each unit.
(2) The traversing well is not expressly prohibited by the terms of a lease.

Oil and Gas Lease Act – Cross Unit Drilling for Unconventional Wells, Act of Nov. 7, 2019, P.L. 634, No. 85; codified at 58 P.S. § 34.2.

20. In enacting Act 85, the General Assembly had a number of goals:

a. reducing surface disturbance by decreasing the number of wells drilled and well pads constructed;

b. decreasing the number of gathering lines necessary to transport natural gas from well pads to interstate pipelines;

c. decreasing the number of access roads necessary for access to and from well pads; and

d. decreasing the amount of truck traffic.

*See* Senate Co-Sponsorship Memorandum dated March 5, 2019, from Sen. Gene Yaw to All Senate Members Regarding "Reducing Surface Impact from Unconventional Gas Wells."

21. The Constitution of the Commonwealth of Pennsylvania states that "No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const. art. 1, § 17.

22. The Constitution of the United States states that "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." U.S. Const. art. 1, §10, cl. 1.

Respectfully submitted,

**K&L GATES LLP**

<u>/s/ David R. Fine</u>
David R. Fine
Market Square Plaza
17 North Second Street, 18th Floor
Harrisburg, PA 17101
(717) 231-4500
david.fine@klgates.com

*Counsel for Defendant SWN Production Company, LLC*

August 8, 2022

# CERTIFICATE OF SERVICE

I certify that, on August 8, 2022, I filed the attached document with the Court's CM/ECF system such that the following should receive service automatically:

Robert J. Burnett, Esq.
Brendan A. O'Donnell, Esq.
Houston Harbaugh, P.C.
401 Liberty Avenue
Three Gateway Center, 22nd Floor
Pittsburgh, PA 15222


/s/ David R. Fine

312424169.2