# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARNER VALLEY FARM, LLC, | : | No. 4:21-CV-01079 |
| | : | |
| Plaintiff, | : | Chief Judge Brann |
| | : | |
| *vs.* | : | |
| | : | |
| SWN PRODUCTION COMPANY, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**Plaintiff's Brief in Support of Plaintiff's
Motion for Partial Summary Judgment**

Date: August 8, 2022      By:    */s/ Robert J. Burnett*
Robert J. Burnett, Esq.
Pa. ID. No. 76734
Brendan A. O'Donnell, Esq.
Pa. ID. No. 309007
HOUSTON HARBAUGH, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
(412) 281-4499 (fax)
rburnett@hh-law.com
odonnellba@hh-law.com
*(Counsel for Plaintiff)*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF FACTS ........................................................................................ 1

PROCEDURAL HISTORY ..................................................................................... 3

STATEMENT OF THE QUESTION INVOLVED ............................................... 4

STATUTORY TEXT IN QUESTION ................................................................... 5

STANDARD OF REVIEW ...................................................................................... 6

ARGUMENT ............................................................................................................ 7

   A. Act 85 of 2019 violates the Federal Contract Clause ................................... 9

     a. The 2006 Lease is a contract subject to the Contracts Clause ................... 10

     b. Act 85 impaired the 2006 Lease by upending Warner Valley's legitimate
     expectation that the 2006 Lease was the extent of its contractual relationship
     with SPC .......................................................................................................... 10

     c. Act 85 substantially impairs the 2006 Lease. ............................................ 12

     d. Act 85 does not have a significant and legitimate public purpose that
     excuses its impairment of the 2006 Lease. ...................................................... 19

   B. Act 85 of 2019 violates the Contract Clause of the Pennsylvania
   Constitution ........................................................................................................ 21

CONCLUSION ....................................................................................................... 22

CERTIFICATE OF COMPLIANCE ................................................................... 24

CERTIFICATE OF SERVICE .............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

Allied Structural Steel Co. v. Spannaus, 438 U.S. 234 (1978) .................. 10, 19, 20

American Express Travel Related Services. Co. v. Sidamon-Eristoff, 755 F. Supp. 2d 556 (D.N.J. 2010) ............................................................................. 6

Amoco Production Company v. Heimann, 904 F.2d 1405 (10th Cir. 1990) ....... 7, 11

Berckeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195 (3d. Cir. 2006) ........... 6

Board of Commissioners of Tippecanoe County v. Lucas, 93 U.S. 108 (1876) .... 13

Brace v. County of Luzerne, 873 F. Supp. 2d 616 (M.D.Pa. 2012) ........................ 9

Celsius Energy Co. v. Mid-America Petroleum, Inc., 894 F.2d 1238 (10th Cir. 1990) ............................................................................................................... 11

Commonwealth v. Ritz, 153 A.3d 336 (Pa. Super. Ct. 2016) ................................ 22

Coolidge v. Long, 282 U.S. 582 (1931) ................................................................ 13

Humphreys v. DeRoss, 790 A.2d 281 (Pa. 2002) ................................................. 22

Keystone Bituminous Coal Association. v. Duncan, 771 F.2d 707 (3d Cir. 1985) 19

Louisiana v. City of New Orleans, 102 U.S. 203 (1880) ........................................ 9

McWreath v. Range Res.-Appalachia, LLC, 645 F. App'x 190 (3d Cir. 2016) ...... 15

Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciete Through Insurance Commissioner of Puerto Rico, 125 F.3d 9 (1st. Cir. 1997) ... 20

Nekrilov v. City of Jersey City, 528 F.Supp. 3d 252 (D.N.J. 2021) ......................... 9

Neuhard v. Range Resources-Appalachia, LLC, 29 F. Supp. 3d 46 (M.D.Pa. 2014)
.............................................................................................................. 7, 11, 23

New Jersey Retail Merchants Association v. Sidamon-Eristoff, 669 F.3d 374 (3d
Cir. 2012)................................................................................................... 12

Northern Natural Gas Company v. Munns, 254 F. Supp. 2d 1103 (S.D. Iowa 2003)
.............................................................................................................. 14, 15

Pomposini v. T.W. Phillips Gas and Oil Co., 580 A.2d 776 (Pa. Super. Ct. 1990) 11

SodexoMAGIC, LLC v. Drexel University, 24 F. 4th 183 (3d Cir. 2022) .............. 11

Steuart v. McChesney, 444 A.2d 659 (Pa. 1982) .................................................... 15

Sveen v. Melin, 138 S.Ct. 1815 (U.S. 2018) ........................................................... 10

Szymanowski v. Brace, 987 A.2d 717 (Pa. Super. Ct. 2009) ................................. 15

T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261 (Pa. 2012). ............ 10, 13, 15

United States Trust Co. v. New Jersey, 431 U.S. 1 (1977)...................................... 19

United Steel Paper & Forestry Rubber Manufacturing Allied Indus. & Serv.
Workers International Union AFL-CIO-CLC v. Government of Virgin Islands,
842 F.3d 201 (3d Cir. 2016) ........................................................................... 9

Watters v. Board of School Directors of City of Scranton, 975 F.3d 406 (3d Cir.
2020) ....................................................................................................... 9, 10

**Statutes**

58 P.S. § 34.2 ................................................................................................. passim

**Other Authorities**

PA Const. art. I, § 17 ............................................................... 21

U.S. Const. art. I, § 10 .............................................................. 9

**Rules**

Fed.R.Civ.P. 56 ......................................................................... 6

**Treatises**

38 Am. Jur. 2d Gas and Oil § 94 (1968) .................................. 11

## STATEMENT OF FACTS

On April 12, 2006, Wayne W. Warner and Reba Warner (the "Warners") executed an oil and gas lease (the "2006 Lease") in favor of Fortuna Energy, Inc. [ECF. 24 at ¶ 1; ECF 24-1]. The 2006 Lease applied to 506.46 acres of oil and gas in Pike Township and Stevens Township in Bradford County, Pennsylvania (the "Leasehold"). [ECF. 24 at ¶ 2; ECF 24-1 at §2].

In 2010, the Warners conveyed the oil and gas underlying the Leasehold to Warner Valley Farm, LLC ("Warner Valley"). [ECF. 24 at ¶ 3; ECF 24-2]. In 2019, SWN Production Company, LLC ("SPC") acquired some of the lessee's interest in the 2006 Lease. [ECF. 24 at ¶ 4; ECF 24-3].

The Leasehold has been pooled into several production units, by SPC and another operator. Of relevance to the issue at-hand is SPC's inclusion of the Leasehold in the "Campbell Ercole Demento North Gas Unit" and the "Chamberlin Meyer North Gas Unit" (collectively, the "SPC Units"). [ECF. 24 at ¶ 5]. Within the SPC Units are a number of oil and gas wells that have both a vertical component and a horizontal production component. [ECF. 24 at ¶ 6]. These wells are the:

a.     Chamberlin Meyer #8H;

b.     Chamberlin Meyer #9H;

c.     Chamberlin Meyer #10H;

d.    Chamberlin Meyer #11H;

e.    Campbell Ercole Demento #10H;

f.    Campbell Ercole Demento #11H.

(collectively, the "Wells"). [ECF. 24 at ¶ 6]. The horizontal, productive components of the Wells are not entirely located within the boundaries of either of the SPC Units. That is, only part of the Wells' productive horizontal length is within one of the SPC Units, while the balance of the Wells' productive horizontal length lies beyond one of the SPC Units. [ECF. 24 at ¶ 6; ECF 24-4 (under seal)].

The Wells are operated by SPC and actively produce hydrocarbons. [ECF. 24 at ¶ 7]. SPC pays production royalties to Warner Valley for the oil and gas produced from the Wells that SPC has allocated to the SPC Units. [ECF. 24 at ¶ 8; ECF 24-5].

## PROCEDURAL HISTORY

The Plaintiffs filed a Complaint against SWN Production Company, LLC in the Court of Common Pleas of Bradford County, Pennsylvania on May 14, 2021 which SPC removed to the United States District Court for the Middle District of Pennsylvania. On June 13, 2022, the Court, acting on the parties' joint request, entered an Order modifying case management deadlines to entertain motions for summary judgment regarding the constitutionality of Pennsylvania Act 85 prior to disposition of other issues in this matter. [ECF 18].

## STATEMENT OF THE QUESTION INVOLVED

Is Pennsylvania Act 85 of 2019 an unconstitutional impairment of the 2006 Lease under both the United States Constitution and the Pennsylvania Constitution because Act 85 of 2019 creates cross-unit drilling rights that were not granted in the 2006 Lease?

*Suggested Answer:* Yes

# STATUTORY TEXT IN QUESTION

## § 58 P.S. § 34.2. Cross unit drilling for unconventional wells

**(a) General rule.--**If an operator has the right to drill an oil or gas well on separate units, the operator may drill and produce a well that traverses, by horizontal drilling, more than one unit, if:

> (1) The operator reasonably allocates production from the well to or among each unit the operator reasonably determines to be attributable to each unit. The operator may allocate production on an acreage basis for multiple units provided the allocation has a reasonable correlation to the portion of the horizontal well bore in each unit.

> (2) The traversing well is not expressly prohibited by the terms of a lease.

**(b) Location requirement.--**The 330-foot location requirement in section 6 of the act of July 25, 1961 (P.L. 825, No. 359),[1] (58 P.S. § 406) known as the Oil and Gas Conservation Law, shall not apply to unit lines traversed by a conservation well.

**(c) Construction.--**Nothing in this section shall be construed to:

> (1) authorize an operator to drill an oil or gas well that is not subject to a valid lease or royalty agreement; and

> (2) automatically expand or diminish the current surface rights of an operator to include operations related to any existing unit or any well drilled between existing units.

## STANDARD OF REVIEW

Summary judgment shall be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Determinations about the existence of genuine issues of material fact are drawn in favor of the non-moving party, but the non-moving party must point to some evidence in the record that creates a genuine issue of material fact. Berckeley Investment Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d. Cir. 2006).

When considering a claim that a law violates the Contracts Clause of Article 1, Section 10 of the United States Constitution, "[g]enerally, the standard of review applied to the court's review of the legislature's interests is more exacting than rational basis." American Express Travel Related Services. Co. v. Sidamon-Eristoff, 755 F. Supp. 2d 556, 576–77 (D.N.J. 2010), order clarified (Jan. 14, 2011), (aff'd sub nom. American Express Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359 (3d Cir. 2012), and aff'd sub nom. New Jersey Retail Merchants Association v. Sidamon-Eristoff, 669 F.3d 374 (3d Cir. 2012)).

# ARGUMENT

Pennsylvania Act 85 of 2019 ("Act 85"), 58 P.S. § 34.2, is a blatant interjection of the Commonwealth of Pennsylvania into private oil and gas leases, like the 2006 Lease, that retrospectively amends *all* oil and gas leases in Pennsylvania to authorize the drilling and operation of cross-unit laterals unless "*expressly prohibited*" by the underlying lease. *See*, 58 P.S. § 34.2(a). Act 85 allows oil and gas lessees to drill and produce hydrocarbons as they wish, without regard to the contents of the underlying oil and gas lease or having to negotiate with lessors to amend leases to secure rights to drill and operate cross-unit laterals. This contravenes federal and state constitutional prohibitions regarding the impairment of private contracts.

Pennsylvania shale gas drillers have employed unitization to develop unconventional formations, like the Marcellus shale. "Unitization, a common practice of the oil and gas industry that creates units contemplated in the Lease, 'refers to the consolidation of mineral or leasehold interests in oil or gas covering a common source of supply.'" Neuhard v. Range Resources-Appalachia, LLC, 29 F. Supp. 3d 461, 470 (M.D.Pa. 2014) (quoting Amoco Production Company v. Heimann, 904 F.2d 1405, 1410 (10th Cir. 1990)). A driller records a unit declaration identifying the constituent properties in the unit and develops the unit by drilling a well or wells within its boundaries. Generally drilling activities

occurring within in a unit are attributed to all contributing leases, regardless of where the activity occurs. Hydrocarbon production from unit wells is generally allocated to each contributing lease based on its share of the overall unit size.

Cross-unit laterals change this dynamic because these wells cross unit boundaries. Instead of the entirety of the horizontal well segment being within a single unit, the horizontal component of a cross-unit lateral enters multiple units. A cross-unit lateral may pass through the subsurface of a unit without producing any hydrocarbons from that unit or a cross-unit lateral may produce hydrocarbons from more than one unit along its length.

Act 85 modifies the 2006 Lease by retrospectively amending it, along with all other oil and gas leases in Pennsylvania, to allow the lessee to drill and operate cross-unit laterals. The only exception is that this new, but retrospective, statutory authorization does not apply oil and gas leases that expressly prohibit cross-unit laterals. *See,* 58. P.S. § 34.2(a). This state action vests oil and gas lessees with substantial *new* rights with no consideration to lessors, it incorrectly presupposes that the state can retrospectively change private contracts by granting new rights to the oil and gas industry and it mistakenly assumes that cross-unit laterals can only be proscribed in a lease via express prohibition. Accordingly, it is respectfully submitted that Act 85 must be stricken as an unconstitutional impairment of private contracts.

## A. Act 85 of 2019 violates the Federal Contract Clause

Article I, Section 10 of the United States Constitution precludes states from passing any law "impairing the Obligation of Contracts." United Steel Paper & Forestry Rubber Manufacturing Allied Indus. & Serv. Workers International Union AFL-CIO-CLC v. Government of Virgin Islands, 842 F.3d 201, 210 (3d Cir. 2016) (citing U.S. Const. art. I, § 10). The federal constitution ". . . restricts the power of States to disrupt contractual arrangements." Watters v. Board of School Directors of City of Scranton, 975 F.3d 406, 412 (3d Cir. 2020). "The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced, -by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation." Louisiana v. City of New Orleans, 102 U.S. 203, 206-07 (1880).

"In order to state a claim under the Contract Clause, the plaintiff must allege that (1) a contractual right existed, (2) a change in state law impaired the contract, and (3) the impairment was substantial." Brace v. County of Luzerne, 873 F. Supp. 2d 616, 624 (M.D.Pa. 2012) (aff'd 535 Fed. App'x. 155 (3d Cir. 2013)). "To assess whether there has been an impairment of a contractual relationship, [the court asks] whether legitimate expectations have been thwarted." Virgin Islands, 842 F. 3d at 210; Nekrilov v. City of Jersey City, 528 F.Supp. 3d 252 (D.N.J. 2021). If substantial impairment is found, ". . . [the] 'inquiry turns to the means and ends of

the legislation,' and [courts] evaluate whether the state law has 'a significant and legitimate public purpose' as well as whether the law is 'drawn in an appropriate and reasonable way to advance that purpose.'" Watters, 975 F.3d at 412 (quoting Sveen v. Melin, 138 S.Ct. 1815 (U.S. 2018)).

### a. The 2006 Lease is a contract subject to the Contracts Clause

The federal Contracts Clause applies to any kind of contract. Sveen, 138 S.Ct. at 1821; Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244-45, n. 16 (1978). The 2006 Lease is an oil and gas lease, which is a contract. *See,* T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012).

### b. Act 85 impaired the 2006 Lease by upending Warner Valley's legitimate expectation that the 2006 Lease was the extent of its contractual relationship with SPC.

Prior to Act 85, no Pennsylvania law authorized lessees, like SPC, to develop oil and gas leases with cross-unit laterals unless a lease "expressly prohibited" that development. *See,* 58 P.S. § 34.2(a). Prior to the enactment of Act 85, there was no law that addressed the allocation of hydrocarbon production from a cross-unit lateral amongst multiple units. Id.

Before Act 85 became effective, the entirety of the duties and obligations between Warner Valley and SPC associated with the Leasehold were controlled by the integrated 2006 Lease. [ECF 24-1 at ¶ 20]. Under Pennsylvania law, an integrated contract is ". . . a contract that is the only agreement between the parties

on a specific topic." SodexoMAGIC, LLC v. Drexel University, 24 F. 4th 183, 212 (3d Cir. 2022). Warner Valley legitimately expected that the totality of its contractual bargain with SPC was within the four corners of the 2006 Lease.

Excepting "forced pooling" statutes, which are not at-issue here, oil and gas development via pooling and unitization was understood to be rooted in the lease contract decades before the 2006 Lease was executed. "The unitization clause of an oil and gas lease grants the lessee the power to unitize the lessors interest without further consent by the lessor. Without such a clause, the lessee has no authority to pool or unitize the interests of the lessor." Amoco, 904 F.2d at 1405 (internal citations omitted); Celsius Energy Co. v. Mid-America Petroleum, Inc., 894 F.2d 1238, 1240 (10th Cir. 1990). This Honorable Court has recognized that unitization rights emanate from the lease contract. Neuhard, 29 F. Supp. 3d at 470-71

Nothing in the 2006 Lease expressly authorizes development of the Leasehold via cross-unit laterals. [ECF 24-1]. The 2006 Lease is a "form" lease. When an oil and gas lease is prepared by a lessee, any ambiguity in the agreement is construed in the favor of the lessor and, "[t]herefore, '[a]ll rights claimed by the lessee that are not conferred in direct terms or by fair implication . . . are to be considered as being withheld by the lessor.'" Pomposini v. T.W. Phillips Gas and Oil Co., 580 A.2d 776, 778 (Pa. Super. Ct. 1990) (quoting 38 Am. Jur. 2d Gas and Oil § 94 (1968)) (aff'd sub nom. Kepple v. Fairman Drilling Co., 615 A.2d 1298

(Pa. 1992)). Therefore, no rights to develop the Leasehold via cross-unit laterals were granted in the 2006 Lease to SPC.

Act 85 impairs the 2006 Lease by disregarding the integrated nature of the contract and amending the 2006 Lease to allow development of the Leasehold via cross-unit laterals. That benefits SPC by vesting it with new rights which were never granted by Warner Valley or its predecessor.

### c. Act 85 substantially impairs the 2006 Lease.

Act 85 substantially impairs the 2006 Lease because it vests SPC with cross-unit lateral drilling rights that were not granted in the 2006 Lease. "In assessing substantial impairment, the court looks to 'the legitimate expectations of the contracting parties, and whether the modification imposes an obligation or liability that was unexpected at the time the parties entered into the contract and relied on its terms.'" New Jersey Retail Merchants Association v. Sidamon-Eristoff, 669 F.3d 374, 386 (3d Cir. 2012) (internal quotations and citations omitted) (cert denied 568 US 978).

Since pooling and unitization rights are rooted in, and limited by, the terms of oil and gas leases, state action modifying these rights is, necessarily, a substantial impairment of the 2006 Lease. While the 2006 Lease granted pooling and unitization rights to SPC, Act 85 retrospectively expands this contractual grant for the benefit of SPC and to the detriment of Warner Valley.

Act 85 does not just modify the 2006 Lease contract; it vests SPC with *new* property rights. Legislation that modifies property rights impairs contracts:

> Private property cannot be taken from individuals by the State, except for public purposes, and then only upon compensation, or by way of taxation; and any enactments to that end would be regarded as an illegitimate and unwarranted exercise of legislative power. And any attempt by the legislature to take private property from its grantee, and restore it to its grantor, would be in conflict with the constitutional inhibition against impairing the obligation of contracts.

Board of Commissioners of Tippecanoe County v. Lucas, 93 U.S. 108, 114 (1876).

Similarly, in Coolidge v. Long, 282 U.S. 582, 595 (1931) the Supreme Court opined:

> The trust deeds are contracts within the meaning of the contract clause of the Federal Constitution. They were fully executed before the taking effect of the state law under which the excise is claimed. The commonwealth was without authority by subsequent legislation, whether enacted under the guise of its power to tax or otherwise, to alter their effect or to impair or destroy rights which had vested under them.

While the 2006 Lease is a contract, it also vested SPC with real property rights in the Leasehold's oil and gas. When a Pennsylvania oil and gas lease is executed, the lessee is vested with rights that can become a fee simple determinable if oil and gas is produced during the lease's primary term. *See,* Jedlicka, 42 A.3d at 267. A lease pooling clause, like the 2006 Lease's "Pooling/Unitization" provision, sets limits on the lessee's ability to use its fee simple determinable oil and gas interests. Act 85 enlarges this grant.

The 2006 Lease's "Pooling/Unitization" provision allows SPC to pool and commingle the Leasehold oil and gas with hydrocarbons produced from other unit leases, rendering the source of the hydrocarbons within the unit to be immaterial, since all contributing acreage in the unit shares in all hydrocarbons produced from that unit. Act 85 broadens SPC's fee simple determinable interests by vesting SPC with the ability to use its fee simple interests in the Leasehold's hydrocarbons as part of a multi-unit development involving cross-unit laterals. Instead of drilling through the oil and gas underlying the Leasehold or lands unitized with the Leasehold to produce that oil and gas, Act 85 grants SPC both a subsurface easement to drill through that area without producing anything and also the right to remove natural gas from other units through that same wellbore. That is a more expansive use of the fee simple determinable than was granted in the 2006 Lease and does not benefit Warner Valley by producing its hydrocarbons.

The situation with Act 85 is similar to an Iowa law that prescribed three ways that natural gas pipeline rights of way could revert back to the property owner from whom the easement was taken, which was addressed in Northern Natural Gas Company v. Munns, 254 F. Supp. 2d 1103 (S.D. Iowa 2003). The pipeline operator plaintiffs claimed that the Iowa law violated the federal Contracts Clause because it ". . . adjusts the rights bargained for between them and the landowners" and impacted perpetual easements that the pipeline operators acquired

by contract. Id. at 1114-15. The District Court agreed with the pipeline operators and entered summary judgment in their favor. Id. at 1115. The same result must be found here. The nature and extent of property rights granted in the 2006 Lease are contained in the 2006 Lease. The state cannot alter and change that bargain by granting new rights via legislation.

Act 85 also substantially impairs the 2006 Lease because it overrides the intentions of the contracting parties. The long-established canon of construction recognizes the need to review the entirety of an instrument to ascertain and effectuate the parties' intentions. *See,* Szymanowski v. Brace, 987 A.2d 717 (Pa. Super. Ct. 2009); Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982). Moreover, the language the parties used in the contract takes precedence over silent intentions. McWreath v. Range Res.-Appalachia, LLC, 645 F. App'x 190, 193 (3d Cir. 2016) (quoting Jedlicka, 42 A.3d at 267). Act 85 upsets this dynamic in two ways.

First, Act 85 operates from the faulty premise that an oil and gas lease only proscribes cross-unit lateral development by expressly prohibiting it. 58 P.S. § 34.2(a)(2). Notwithstanding the fact that Act 85 provides no description of how one determines if cross-unit laterals are "expressly prohibited"[1], the statute elevates

---

[1] It is unclear how lessors can be expected to "expressly prohibit" developmental activities that they may have never heard of, or which may not have even been contemplated when a lease was signed.

certain "magic words" over the balance of the contract. Id. That substantially impairs the 2006 Lease because it disregards the expression of the parties' intent embodied in the totality of the lease. Act 85 forecloses this Honorable Court's ability to look to the entirety of the 2006 Lease to ascertain the parties' intent on this subject.

Second, the 2006 Lease prohibits cross-unit laterals without an "express" prohibition, so Act 85 directly overrides the parties' intent. If the 2006 Lease granted cross-unit lateral rights, its provision would address that type of development. The 2006 Lease does not do this.

The "Pooling/Unitization" provision and the "Operations" provision in the 2006 Lease describes activities that maintain the 2006 Lease in effect. In both instances, the provisions address drilling and preparatory activities that occur on the surface of property within a unit that includes the Leasehold. [ECF 24-1 at §§ 3, 12]. If the type of drilling and preparatory activities on the surface of property within the unit satisfy the 2006 Lease criteria, they are attributed to the Leasehold as if they were occurring on the Leasehold. [ECF 24-1 at §§ 3, 12]. But, a cross-unit lateral would not necessarily involve any drilling or preparatory work on the surface of land within a unit that includes the Leasehold.

So, preparatory and drilling activities for a cross-unit lateral taking place on the surface of land within a unit including the Leasehold are attributed to the

Leasehold, but those same types of activities, for the same type of well, are not attributed to the Leasehold if the surface disturbance occurs outside of a unit that includes the Leasehold, even though the cross-unit lateral would travel through and produce from the unit that includes the Leasehold. It is reasonable to expect that if the parties to the 2006 Lease, *especially the lessee*, intended to allow development via cross-unit laterals, this logical gap would have been addressed.

This same inconsistency arises again in Section 3 of the 2006 Lease which provides that it remains operative as long as a well capable of production ". . . is located on the leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold." [ECF 24-1 at § 3]. A cross-unit lateral could be drilled such that its horizontal component is not perforated or stimulated in the section traversing a unit that includes the Leasehold, but with other segments of that cross-unit lateral being perforated, stimulated and capable of producing hydrocarbons. The 2006 Lease does not address what part of a cross-unit lateral must be capable of production to satisfy Section 3 of the 2006 Lease.

The 2006 Lease makes no provision for royalties from a cross-unit lateral. The "Royalty" provision in the 2006 Lease requires the lessee to pay Warner Valley one-eighth of all oil, gas and constituents thereof produced, saved, marketed and sold from the Leasehold. [ECF 24-1 at §4(a)(ii)]. The "Pooling/Unitization" provision modifies that requirement so that Warner Valley is

paid royalty from a unit based on the Leasehold's participation within the unit. [ECF 24-1 at § 12]. But, in either instance, the 2006 Lease ties the royalty to the quantifiable volume of hydrocarbons produced from a specific geographic area: the Leasehold or a unit that includes the Leasehold.

In a cross-unit lateral, hydrocarbons may be produced from multiple units, which means they have to be allocated. Act 85 does not require an operator to measure hydrocarbons at unit boundaries to determine what volumes were produced from each unit along the cross-unit lateral. Instead, Act 85 only mandates that the operator "reasonably allocates production from the well to or among each unit the operator reasonably determines to be attributable to each unit." 58 P.S. § 34.2(a)(1).

Not only does this vest the operator with significant discretion, it changes the royalty bargain in the 2006 Lease. Instead of Warner Valley being paid a royalty based on a volume of hydrocarbons quantifiably produced from a defined geographic area, Act 85 allows SPC to pay Warner Valley a royalty based on what SPC "reasonably allocates". *See,* 58 P.S. § 34.2. This substantially impairs the royalties that the Warner Valley receives by rewriting the 2006 Lease royalty provision.

**d. Act 85 does not have a significant and legitimate public purpose that excuses its impairment of the 2006 Lease.**

There is no "police power" justification of Act 85 that excuses its retrospective application. Under the United States Constitution, an act that substantially impairs contractual rights can only be justified if its retroactive enforcement is a "narrow" and "reasonable" measure designed to remedy an "emergency need," or a "broad, generalized economic or social problem." Allied Structural Steel, 438 U.S. at 242 (retroactive state-imposed vesting requirement unconstitutional); *see*, United States Trust Co. v. New Jersey, 431 U.S. 1 (1977) (state could not retroactively alter a statutory bond covenant relied upon by bond purchasers).

While it is true that courts defer to legislative judgment about the necessity and reasonableness of enactments in the economic and social spheres when the state is not a party to the contract in question, that is not absolute. *See,* Keystone Bituminous Coal Association. v. Duncan, 771 F.2d 707, 718 (3d Cir. 1985) (*aff'd sub nom.* Keystone Bituminous Coal Association v. DeBenedictis, 480 U.S. 470, (1987)). Instead, "[a]lthough deference is due to the legislature and weight is given to the legislature's own statement of purposes for the law, a court must undertake its own independent inquiry to determine the reasonableness of the law and the importance of the purpose behind it." Mercado-Boneta v. Administracion del

<u>Fondo de Compensacion al Paciete Through Insurance Commissioner of Puerto Rico</u>, 125 F.3d 9, 13 (1ˢᵗ. Cir. 1997)

Courts use a sliding scale when examining whether a public need is sufficiently important to allow a contractual impairment: "The severity of the impairment measures the height of the hurdle the state legislation must clear." <u>Allied Structural Steel</u>, 438 U.S. at 245. If the impairment is minor, an important public purpose may allow it. <u>Id.</u> Here, however, the impairment is severe—Act 85 effectively introduces a new provision into the 2006 Lease and dramatically restructures the parties' rights and responsibilities. Warner Valley submits that this type of fundamental impairment can only be warranted by the most urgent public need.

There is no urgent public need to retrospectively modify the 2006 Lease and every other Pennsylvania oil and gas lease to permit cross-unit laterals unless expressly prohibited in the underlying leases. Co-sponsorship memoranda from both houses of the Pennsylvania General Assembly offer only vague talking points and no substantive justifications for the legislation. A January 7, 2019 House co-sponsorship memorandum states that Cross-Unit Drilling ". . . means less well pads, less access roads, less truck traffic, less pipelines, and less surface disturbance altogether. It is a positive for landowners, the environment, neighbors, and our local governments." A Senate co-sponsorship memorandum from March 5,

2019 is essentially the same.[2] These expressions of purpose could justify a wide range of conduct.

Part of Act 85 excepts conservation wells from a 330 foot unit buffer requirement under another statute to allow these wells to cross unit boundaries. *See,* 58 P.S. § 34.2(b). All of the objectives from the Act 85 co-sponsorship memoranda could have been accomplished with this removal of governmental "red tape" about well locations. Then, oil and gas lessees could negotiate with lessors to modify leases to allow for cross-unit laterals. There was no reason for Act 85 to go a step further and retrospectively change every lease in Pennsylvania.

## B. Act 85 of 2019 violates the Contract Clause of the Pennsylvania Constitution

In addition to violating the federal constitution, Act 85 also violates Article I, Section 17 of the Pennsylvania Constitution. Article I, Section 17 of the Pennsylvania Constitution states "[n]o ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, be passed." PA Const. art. I, § 17. "[T]he test for unconstitutional impairment of contract is the same. . ." under both the federal and Pennsylvania

---

[2] These memoranda are collectively attached as **Appendix 1**.

constitutions. Commonwealth v. Ritz, 153 A.3d 336, 346 (Pa. Super. Ct. 2016). Accordingly, Warner Valley incorporates its above-discussion by reference.

Again, Act 85 is a retrospective law that applies to all oil and gas leases, regardless of when they were executed. "[R]etrospective laws are permitted when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair and do not vary existing obligations contrary to their situation when entered into and when prosecuted." Humphreys v. DeRoss, 790 A.2d 281, 284, n. 3 (Pa. 2002) (internal quotations and citations omitted). Act 85 disturbs vested rights by changing the 2006 Lease to enlarge its grant of property rights without consideration or Warner Valley's consent. By doing this, Act 85 violates Article I, Section 17 of the Pennsylvania constitution.

## CONCLUSION

Act 85 retrospectively modifies every oil and gas lease in Pennsylvania to allow cross-unit laterals unless the underlying lease expressly prohibits them. *See,* 58 P.S. § 34.2. This disturbs settled grants of property rights and overrides bargained-for contractual duties and obligations set forth within the totality of oil and gas lease contracts. Instead of incentivizing parties to draft more thorough contracts to contemplate and provide-for prospective events, Act 85 is state action that changes the contract to lessees' benefit and to lessors' detriment. That

fundamentally upsets Warner Valley's settled expectations its 2006 Lease would be effectuated as-written. *See,* Neuhard, 29 F. Supp. 3d at 475, 76.

Warner Valley submits that the retrospective amendment of private contracts via legislation to materially change the parties' bargain is the type of harm that Article I, Section 10 of the United States Constitution and Article I, Section 17 of the Pennsylvania Constitution were designed to prevent. Warner Valley respectfully submits that it is entitled to summary judgment as to the unconstitutionality and ineffectiveness of Act 85.

Respectfully submitted,

Date: August 8, 2022     By:  */s/   Robert J. Burnett*
Robert J. Burnett, Esq.
Pa. ID. No. 76734
Brendan A. O'Donnell, Esq.
Pa. ID. No. 309007
HOUSTON HARBAUGH, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
(412) 281-4499 (fax)
*(Counsel for Plaintiff)*

# CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.8(b)(2), I hereby certify that this Brief contains 4,805 words, which is less than 5,000 words, as calculated by the word count feature on the word processing program used to prepare this Brief and therefore, this Brief complies with L.R. 7.8(b)(2).


Date: August 8, 2022

By: */s/ Robert J. Burnett*
Robert J. Burnett, Esq.
Pa. ID. No. 76734
Brendan A. O'Donnell, Esq.
Pa. ID. No. 309007
HOUSTON HARBAUGH, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
(412) 281-4499 (fax)
*(Counsel for Plaintiff)*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Brief in Support of Motion for Partial Summary Judgment** was electronically filed and is available for viewing and downloading from the ECF system and was sent to counsel of record this 8th day of August 2022, via electronic service through the ECF system as follows:

David R. Fine
K&L Gates LLP
Market Square Plaza
17 North Second St., 18th Floor
Harrisburg, PA 17101
(*Counsel for SWN Production Company, LLC*)

By: ___*/s/ Robert J. Burnett*___
Robert J. Burnett, Esq.
Pa. ID. No. 76734
Brendan A. O'Donnell, Esq.
Pa. ID. No. 309007
HOUSTON HARBAUGH, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
(412) 281-4499 (fax)
(*Counsel for Plaintiff*)

{CLIENT WORK/41809/0000 H1961194:4}