### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARNER VALLEY FARM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:21-CV-01079 |
| | ) | (Chief Judge Brann) |
| SWN PRODUCTION COMPANY, LLC, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| REPSOL OIL & GAS USA, LLC, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |
| | ) | |

---

## SUPPLEMENTAL BRIEF IN SUPPORT OF REPSOL OIL & GAS USA, LLC'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

Mark K. Dausch, Esquire
PA ID No. 205621
mdausch@babstcalland.com
Joseph V. Schaeffer, Esquire
PA ID No. 323256
jschaeffer@babstcalland.com
BABST, CALLAND, CLEMENTS &
ZOMNIR, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5655 – Phone
(412) 394-6576 – Facsimile
*Counsel for Repsol Oil & Gas USA, LLC*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................... ii
TABLE OF AUTHORITIES .......................................................................... iii
INTRODUCTION .............................................................................................1
STATEMENT OF SUPPLEMENTAL QUESTIONS INVOLVED ........................2
ARGUMENT .....................................................................................................2
    A. Legal Standard.......................................................................................2
    B. The Lease confers the right to drill wells with horizontal
       laterals extending across two or more drilling or
       production units. ...............................................................................3
CONCLUSION .................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Atl. Richfield Co. v. Razumic*, 390 A.2d 736 (Pa. 1978) ...........................................3

*McWreath v. Range Resources-Appalachia, LLC*, 645 F. App'x
   190 (3d Cir. 2016)...........................................................................................6

*Pomposini v. T.W. Phillips Gas & Oil Co.*, 580 A.2d 776 (Pa.
   Super. 1990) ....................................................................................................6

*Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d
   563 (Pa. 1983) .................................................................................................3

*T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261 (Pa. 2012)
   ........................................................................................................................2, 3

## Rules

L.R. Civ. P. 56.1.................................................................................................4

## Constitutional Provisions

Pa. Const. Art. I § 17........................................................................................1
U.S. Const. Art. I § X........................................................................................1

In accordance with the Court's December 23, 2022 Order (ECF No. 62), Repsol Oil & Gas USA, LLC ("Repsol") submits this Supplemental Brief in support of its Cross-Motion for Summary Judgment (ECF No. 47) and in opposition to Warner Valley Farm, LLC's ("Plaintiff") Motion for Partial Summary Judgment (ECF No. 23).

## INTRODUCTION

The lease-interpretation issues that the Court has identified for supplemental briefing resolve Plaintiff's Contracts Clause challenges to Pennsylvania Act 85 because there can be no contractual impairment where, as here, the lease already grants the right to drill a horizontal lateral across two or more drilling or production units (a "cross-unit well"). *See* U.S. Const. Art. I § X (restricting laws "impairing" contractual obligations) & Pa. Const. Art. I § 17 (same).

The lease at issue here ("Lease") grants the lessee expansive property rights in the oil and gas and broad discretion in the manner in which those rights are exercised, granting "such exclusive rights as may be **necessary or convenient for Lessee, at its election**, to explore for, develop, produce, measure and market production from the Leasehold, **using methods and techniques which are not restricted to current technology** …." (ECF 48-2 ¶ 1 (emphasis added)). The Lease further grants the lessee broad rights to not only pool and unitize the Leasehold, but also "**combine**" it "with **any other land or lands, whether contiguous or not**

1

**contiguous**, … so as to create **one (1) or more drilling or production units**. (*Id.* at

¶ 12 (emphasis added)).  And the Lease notably deems any operations occurring on

a drilling or production unit to "have the same effect in continuing this Lease in full

force and effect as if such Operations were conducted upon the Leasehold, or as if

such well capable of production was located on the Leasehold." (*Id.*).

The right to drill a cross-unit well is encompassed within the broad rights

granted under the Lease. Repsol is thus entitled to a summary judgment granting the

declarations sought in its Counterclaim not only on the constitutionality of

Pennsylvania Act 85 of 2019, but also the contractual right to conduct cross-unit

drilling under the Lease.

## STATEMENT OF SUPPLEMENTAL QUESTIONS INVOLVED

1.     Whether the Lease authorizes the drilling and operation of oil and gas

wells for which the horizontal lateral extends into two or more drilling or production

units?  *Suggested Answer*: Yes.

2.     Whether the Lease requires the entirety of each oil and gas well to be

located within a single drilling or production unit?  *Suggested Answer*: No.

## ARGUMENT

**A.     Legal Standard**

The Lease, like any other oil and gas lease, "is in the nature of a contract and

is controlled by principles of contract law." *T.W. Phillips Gas & Oil Co. v. Jedlicka*,

42 A.3d 261, 267 (Pa. 2012).  In interpreting the Lease, the Court is required to

consider "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties."  *Id.*; *see also Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) ("The task of interpreting a contract is generally performed by a court rather than the jury.").  The Court must also interpret the Lease as a whole, giving effect to all its provisions. *Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 739 (Pa. 1978).

**B.     The Lease confers the right to drill wells with horizontal laterals extending across two or more drilling or production units.**

The right to drill a well with horizontal laterals extending across two or more production units—that is, a cross-unit well—is included within the rights expressly conveyed under the Lease.  Under the granting clause in ¶ 1 ("Granting Clause"), the lessee is given "such exclusive rights as may be **necessary or convenient** for Lessee, **at its election**, to explore for, develop, produce, measure, and market production from the Leasehold, **using methods and techniques which are not restricted to current technology** …."  (ECF No. 48-2 at ¶ 1 (emphasis added)).  And under the pooling and unitization clause in ¶ 12 ("Unitization Clause"), the lessee is given the right to "pool, unitize **or combine** all or any portion of the Leasehold with any land or lands to … create one (1) **or more** drilling or production units."  (*Id.* at ¶ 12 (emphasis added)).  Though independently sufficient to authorize cross-unit drilling, these clauses together grant the lessee the right to create multiple

3

units with any other land(s) and use such methods and techniques as are necessary

and convenient, without restriction to current technology, to produce oil and gas.

The rights conveyed under the Granting Clause in fact are so expansive that,

even standing alone, they encompass the right to drill a cross-unit well.  Cross-unit

wells are undeniably "necessary and convenient" for the lessee because they allow

for greater production with fewer wells and lower costs.[1]  (ECF 48-2 ¶ 1).  Indeed,

these were among the advantages to cross-unit wells that Senator Gene Yaw

identified in his co-sponsorship memorandum for Act 85: "less well pads, less access

roads, less truck traffic, less gathering lines, and less surface disturbance altogether."

(ECF No. 48-3).  Senator Yaw moreover attributed the possibility of these cross-unit

wells to "recent advances in natural gas drilling technology and practices" that allow

the "natural gas industry to now drill longer lateral well bores."  (*Id.*).  For that

reason, too, cross-unit wells are expressly authorized under the Lease as "methods

---

[1] Consistent with Senator Yaw's co-sponsorship memorandum, SWN Production
Company, LLC ("SWN") has adduced evidence that "[d]evelopment using cross-
unit wellbores is more efficient and cost-effective since it allows the producer to
construct just one well pad and drill just one vertical wellbore rather than having
separate well pads and vertical wellbores on each unit" and, in fact, "[w]ithout the
ability to drill a cross-unit wellbore, SWN would not have developed wells on the
units of which [the Leasehold] is a part." (ECF No. 37 ¶¶ 14-15). Though Plaintiff
denied these statements, it did not support its denials with citations to statements in
the record. (*See* ECF No. 50 ¶ 12).  The evidence adduced by SWN is thus deemed
admitted under this Court's local rules. L.R. Civ. P. 56.1 ("All material facts set forth
in the statement required to be served by the moving party will be deemed to be
admitted unless controverted by the statement required to be served by the opposing
party.").

and techniques **which are not restricted to current technology**."  (ECF No. 48-2 ¶ 1 (emphasis added)).  The Court's inquiry into contractual authority for cross-unit drilling can end here: cross-unit drilling is a method and technique both necessary and convenient to developing the Leasehold and thus expressly authorized under the Lease.

The rights conveyed under the Unitization Clause further reinforce finding an express contractual right to cross-unit drilling.  Not only does the Unitization Clause permit the lessee to create **multiple** production units, but it also permits the lessee to include any portion of the Leasehold, **up to its entirety**, in any given production unit.  (ECF No. 48-2 ¶ 12).  Had the parties to the Lease wished to preclude the formation of multiple units and their production through cross-unit wells, they could have done so.  But instead, the only prohibition placed on drilling under the Lease is for "well[s] within 200 feet of any home or barn located on the Leasehold."  (ECF No. 48-2 ¶ 14).  In sum, where the Lease expressly permits the creation of multiple production units and contains no limitations on their development, it also encompasses cross-unit drilling within the "necessary and convenient" methods and techniques authorized to produce from those units.

Plaintiff has dismissed this broad contractual authority because the Lease does not use the term "cross-unit drilling" or specifically refer to the drilling of a

horizontal lateral across unit boundaries.[2]  But the Lease already grants the lessee "such exclusive rights as may be necessary and convenient …, at its election, … using methods and techniques which are not restricted to current technology." (ECF No. 48-2 at ¶ 1).  That cross-unit drilling is both necessary and convenient and a new technology has already been shown by reference to Senator Yaw's co-sponsorship memorandum above.  (ECF No. 48-3).  Moreover, the expansive Granting Clause and specific provision for future technology eliminated the need to specifically enumerate and authorize each individual method and technique.  The Third Circuit in fact has interpreted this same Granting Clause under the Lease as conveying all of the oil and gas rights in the property at issue to the lessee to exclusively explore for and produce oil and gas using "**any** methods or techniques." *McWreath v. Range Resources-Appalachia, LLC*, 645 F. App'x 190, 193 (3d Cir. 2016).  The Lease thus need not reference or authorize the specific method or technique of "cross-unit drilling" because it already authorizes **all** methods and techniques.

Plaintiff also contends that Repsol and SWN have misread the Unitization Clause as supporting the contractual right to cross-unit drilling.  Whereas Repsol and

---

[2] Plaintiff's insistence that the Lease must specifically reference cross-unit drilling is also inconsistent with Pennsylvania law holding that leases confer not only the enumerated rights but also those that are fairly implied.  *See, e.g., Pomposini v. T.W. Phillips Gas & Oil Co.*, 580 A.2d 776, 778 (Pa. Super. 1990).  Even if the Lease did not expressly confer the right to cross-unit drilling, that right thus would be fairly implied as a necessary and convenient method of production.

SWN contend that the Unitization Clause unambiguously authorizes the lessee to include the Leasehold in a single unit combined with other units, Plaintiff contends that the Unitization Clause authorizes multiple units only where each individual unit contains a portion of the Leasehold.  Plaintiff's position is not supported by the lease language.   Nothing in the Unitization Clause expressly requires a drilling or production unit to include Leasehold acreage as Plaintiff contends; rather, the Unitization Clause provides that the lessee may "pool, unitize or combine all or **any portion** of the Leasehold with any land or lands to … create one (1) **or more** drilling or production units."  "Any portion" of the Leasehold, of course, also includes "no portion" of the Leasehold, meaning that the Lease expressly authorizes the lessee to include the Leasehold in a drilling or production unit(s) and then combine it with other units as the lessee sees fit.  But even Plaintiff's interpretation recognizes circumstances under which the Lease authorizes production across multiple units— a fact that is dispositive of the questions presented here.

Finally, Plaintiff contends that the Lease does not authorize cross-unit drilling because it does not fit neatly within the framework under which the lease is held or production royalties are paid.  But this argument, too, rests on a misreading of the Lease.  In addition to permitting the lessee to include any portion of the Leasehold in combination with one or more units, the Unitization Clause provides that operations conducted on any drilling or production unit "shall have the same effect

7

in continuing this Lease in full force and effect **as if such Operations were conducted upon the Leasehold, or as if such well capable of production was located on the Leasehold**." (*Id.* (emphasis added)). The habendum clause in ¶ 3 ("Habendum Clause"), similarly provides that the Lease is held in effect beyond its primary 5-year term if, among other things, a "well capable of producing oil and/or gas is located … on lands pooled, unitized or **combined** with all or a portion of the Leasehold" or "Operations … are being conducted … on lands, pooled, unitized or **combined** with all or a portion of the Leasehold …." (*Id.* at ¶ 3 (emphasis added)). The Lease thus provides for its continuance even if operations are being conducted on a production unit without Leasehold acreage, provided, of course, that it is combined with another production unit including Leasehold acreage. Moreover, the Habendum Clause provides for the Lease to be held even without surface operations or production where "Lessor is receiving Royalty payments or Shut-In Royalty Payments …." (*Id.*). The Lease in these ways can be held without operations or production occurring on the Leasehold.

Nor does cross-unit drilling create a problem for the payment of royalties under the Lease. The royalty clause in ¶ 4 ("Royalty Clause") entitles the lessor to "a royalty in an amount equal to the current market value at the wellhead as and when produced of one-eighth (1/8th) of all oil, gas and the constituents thereof produced, saved, marketed and sold from the Leasehold." (ECF No. 48-2 ¶ 4).

8

Where the Leasehold acreage has been included in a production unit, however, the lessor is entitled to "the same proportion of the Royalty stipulated herein as the surface area of the Leasehold within such drilling or production unit is to the total surface area comprising such drilling or production unit." (*Id.* at ¶ 12). That proportion notably does not change depending on the number of units crossed by a particular well: the lessor will always be entitled to its proportionate share of production allocated to the particular unit(s) containing Leasehold acreage.

In sum, the Lease confers expansive rights upon the lessee to use methods and techniques as necessary and convenient to exploit the conveyed oil and gas rights, without limitation to current technology, and further expressly authorizes the lessee to pool, unitize, or combine the Leasehold into multiple production units. This resolves both questions presented here for supplemental briefing because the contractual authority for cross-unit drilling under the Lease precludes any requirement under the Lease for a lateral to be contained entirely within a unit boundary. Repsol is thus entitled to a summary judgment granting the declarations requested in its Cross-Motion for Summary Judgment and denying Plaintiff's Motion for Partial Summary Judgment.

9

## CONCLUSION

**WHEREFORE**, Repsol requests an Order granting Repsol's Cross-Motion for Summary Judgment and denying Plaintiff's Motion for Partial Summary Judgment.

**Dated**: January 13, 2023

**Repsol Oil & Gas USA, LLC**

/s/ Joseph V. Schaeffer
Mark K.  Dausch, Esquire
PA ID No. 205621
mdausch@babstcalland.com
Joseph V. Schaeffer, Esquire
PA ID No. 323256
jschaeffer@babstcalland.com
BABST, CALLAND, CLEMENTS &
ZOMNIR, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5655 – Phone
(412) 394-6576 – Facsimile