## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARNER VALLEY FARM, LLC, | No. 4:21-CV-01079 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SWN PRODUCTION COMPANY, LLC, | |
| Defendant, | |
| and | |
| REPSOL OIL & GAS USA, LLC, | |
| Intervenor-Defendant | |

## MEMORANDUM OPINION

### JANUARY 24, 2023

Plaintiff Warner Valley Farm, LLC, an oil and gas lessor, sues its two lessees, Defendants SWN Production Company, LLC, and Repsol Oil & Gas USA, LLC, for breach of the oil and gas lease between them (the "2006 Lease") because Defendants operated a cross-unit well, or a well with wellbores that extend beyond unit boundaries. Warner Valley contends that the 2006 Lease does not allow Defendants to drill cross-unit wells.

Warner Valley also seeks a declaratory judgment holding the Pennsylvania Act 85 of 2019 unconstitutional under the Contracts Clause of both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

Act 85 authorized oil and gas lease operators to engage in cross-unit drilling if permitted under the relevant lease by removing other regulatory obstacles.

Warner Valley and SWN both move for summary judgment on the Contracts Clause issue. Repsol moves for summary judgment as well, seeking a declaration that Act 85 is valid and that the 2006 Lease allows cross-unit drilling. For the following reasons, Defendants' motions will be granted, and Warner Valley's motion will be denied.

## I.   BACKGROUND

### A.   The 2006 Lease

The facts of this matter are largely undisputed. In April 2006, Wayne and Reba Warner executed the 2006 Lease with Defendants' predecessor-in-interest for the production of oil and gas on an approximately 500-acre tract in Bradford County, Pennsylvania (the "Leasehold").[1] Through several transactions, Warner Valley and Defendants became the parties to the 2006 Lease.[2] The Leasehold's lands are divided between two production units established by SWN.[3] SWN operates the wells and pays Warner Valley royalties pursuant to the 2006 Lease.[4]

---

[1]   Warner Valley Statement of Material Facts ("SOF"), Doc. 24 ¶¶ 1-2; SWN Response to Statement of Material Facts ("RSOF"), Doc. 45 ¶¶ 1-2; 2006 Lease, Doc. 1-2; *see also* SWN SOF, Doc. 37 ¶¶ 1-2; Warner Valley RSOF, Doc. 50 ¶¶ 1-2.

[2]   Warner Valley SOF, Doc. 24 ¶¶ 3-4; SWN RSOF, Doc. 45 ¶¶ 3-4; Repsol RSOF, Doc. 48 ¶ 4.

[3]   Warner Valley SOF, Doc. 24 ¶¶ 5-6; SWN RSOF, Doc. 45 ¶¶ 5-6; SWN SOF, Doc. 37 ¶¶ 10-11; Warner Valley SOF, Doc. 50 ¶¶ 11-12.

[4]   Warner Valley SOF, Doc. 24 ¶¶ 7-9; SWN RSOF, Doc. 45 ¶¶ 7-9.

The 2006 Lease contains several clauses relevant to this litigation. First, in the 2006 Lease's granting clause, Warner Valley

> grants and leases exclusively to [Defendants] all oil and gas and their constituents . . . underlying the Leasehold, together with such exclusive rights as may be necessary or convenient for [Defendants], at [their respective] election, to explore for, develop, produce, measure and market production from the Leasehold, using methods and techniques which are not restricted to current technology . . . to drill, maintain, operate, cease to operate, plug and abandon wells and remove casings therefrom . . . .[5]

The 2006 Lease remains in effect as long as "a well capable of producing oil and/or gas is located on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold" or "operations," as defined by the 2006 Lease, "are being conducted on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold."[6]

In addition, the 2006 Lease contains a provision regarding pooling and unitization.[7] The 2006 Lease provides that Defendants have the right to, "in [their sole discretion . . . pool, unitize or combine all or any portion of the Leasehold with any other land or lands, whether contiguous or not contiguous . . . so as to create one

---

[5]   2006 Lease, Doc. 1-2 at 8 (¶ 1).

[6]   *Id.* (¶ 3).

[7]   Unitization is a common practice of the oil and gas industry that creates units, which are consolidations of mineral or leasehold interests in oil or gas from a common source. *Neuhard v. Range Resources-Appalachia*, LLC, 29 F. Supp. 3d 461, 470 (M.D. Pa. 2014) (quoting *Amoco Production Company v. Heimann*, 904 F. 2d 1405, 1410 (10th Cir. 1990)).

(1) or more drilling or production units."[8] They also have the right "to change the size, shape and conditions of any unit created."[9]

### B. Act 85 Allows Cross-Unit Drilling

In November 2019, Governor Tom Wolf signed into law Pennsylvania Act 85 of 2019,[10] which amended the Pennsylvania Oil and Gas Lease Act, 58 P.S. § 33.1 *et seq.*[11] Act 85 added section 34.2 to the Oil and Gas Lease Act, which provides that "if an operator has the right to drill an oil or gas well on separate units, the operator may drill and produce a well that traverses, by horizontal drilling, more than one unit, if" it adheres to the following provisions:

1. The operator reasonably allocates production from the well to or among each unit the operator reasonably determines to be attributable to each unit. The operator may allocate production on an acreage basis for multiple units provided the allocation has a reasonable correlation to the portion of the horizontal well bore in each unit.

2. The traversing well is not expressly prohibited by the terms of a lease.[12]

Act 85 also provides that the 330-foot setback limitation contained in 58 P.S. § 406 does "not apply to unit lines traversed by a conservation well."[13] Put differently, Act 85 allows a lease operator who has the right to produce oil from two

---

[8]   *Id.* at 10 (¶ 12).

[9]   *Id.*

[10]   P.L. 183, No. 60 (2019).

[11]   P.L 634, No. 85, *codified at* 58 P.S. § 34.2.

[12]   58 P.S. § 34.2(a). A "conservation well" is one that exceeds 3,800 feet in depth. *See* 58 P.S. § 406.

[13]   *Id.* § 24.2(b).

different units to use one well to produce oil or gas from both units (cross-unit drilling), a practice that was generally prohibited due to statutory restrictions on well placement and setback requirements. Legislative history explains that Act 85's purpose was to increase efficiency and reduce the environmental impact of oil and gas drilling by decreasing the number of wells necessary, commensurately reducing the need for additional appurtenant oil and gas production facilities.[14]

### C.    Procedural History

Warner Valley originally filed suit in the Court of Common Pleas of Bradford County, Pennsylvania.[15] In its Complaint, Warner Valley sues for breaches of the 2006 Lease (Counts I, II, IV, V, and VI), seeking compensatory damages.[16] It also requests a declaratory judgment declaring Act 85 unconstitutional under the Contracts Clause of both the federal and state constitutions.[17]

SWN removed the action to this Court on the basis of diversity and federal question jurisdiction.[18] Repsol moved to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), which the Court granted.[19] Each party has moved for partial summary judgment on the Contracts Clause claim raised in Count III.[20] The Marcellus Shale Foundation moved to appear as *amicus curiae* on the constitutional

---

[14]   *See* Cosponsorship Memoranda, Doc. 39-1 at 2-3.
[15]   Compl., Doc. 1-1.
[16]   *Id.* ¶¶ 23-46, 56-105.
[17]   *Id.* ¶¶ 47-55.
[18]   *See* Notice of Removal, Doc. 1.
[19]   *See* Doc. 40.
[20]   *See* Warner Valley Partial MSJ, Doc. 23; SWN Count III MSJ, Doc. 25. Repsol does not frame its motion that way, but seeks a declaration that Act 85 is a valid legislative enactment.

issue, which the Court also granted.[21] All motions have been fully briefed and are ripe for disposition.[22]

## II.    LAW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[24] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[25] Conversely, to survive summary judgment, a plaintiff must "point to

---

[21]   *See* Doc. 41; Marcellus Shale *Amicus* Br., Doc. 42. The Court thanks the Marcellus Shale Foundation for its contribution to resolving this dispute.

[22]   Before the Court granted Repsol's motion to intervene, the parties then in the case, Warner Valley and SWN, agreed to only address the Contracts Clause issue contained in Count III in their dispositive motions. *See* May 19, 2022 Order, Doc. 17. However, Repsol, which intervened after the May 19, 2022 Order, moves for summary judgment on its counterclaim, which, in addition to addressing the constitutionality of Act 85, seeks a declaratory judgment that the 2006 Lease allows cross-unit drilling. *See* Repsol Ans. to Pet. for Removal, Doc. 43 at 20-25; Repsol Cross-MSJ, Doc. 47. Issuing such a declaration would necessarily dispose of Count I, which alleges that SWN breached the 2006 Lease by drilling across units. *See* Compl., Doc. 1-1 ¶¶ 23-34. In response, the Court allowed all parties to submit supplemental briefing on the issues raised in Count I of Warner Valley's Complaint and in Repsol's counterclaim so it could address all motions together, which it now does in this memorandum opinion. *See* Dec. 23, 2022 Order, Doc. 62.

[23]   Fed. R. Civ. P. 56(a).

[24]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[25]   *Clark*, 9 F.3d at 326.

admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[26]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[27] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[28] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[29] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[30]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[31] a court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[32] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the

---

[26] *Id*.

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[29] *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

[30] *Port Authority of N.Y. and N.J. v. Affiliated FM Insurance Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).

[31] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[32] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

court may "consider the fact undisputed for purposes of the motion."[33] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[34]

## III.    ANALYSIS

### A.    Act 85 Does Not Violate the Contracts Clause

#### 1.    The Contracts Clause Analysis

"To decide whether legislation violates the Contract Clause, the court first determines whether the legislation has substantially impaired the contractual relationship."[35] Determining whether a law substantially impairs a contract depends on "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights."[36]

If the law is found to substantially impair a contractual relationship, "the court then 'turns to the means and ends of the legislation' and evaluates whether the legislation (1) has 'a significant and legitimate public purpose,' and (2) 'is drawn in an appropriate and reasonable way to advance' that public purpose."[37] "[W]here the

---

[33]    Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[34]    Fed. R. Civ. P. 56(c)(3).

[35]    *Nekrilov v. City of Jersey City*, 45 F.4th 662, 678 (3d Cir. 2022) (citing *Sveen  v. Melin*, ___ U.S. ___, 138 S. Ct. 1815, 1821-22 (2018)). This analysis is the same under both the state and federal constitutions. *See South Union Twp. v. Cmwlth, Dep't of Envtl. Prot.*, 839 A.2d 1179 (Pa. Cmwlth. 2003).

[36]    *Sveen*, 138 S. Ct. at 1822.

[37]    *Nekrilov*, 45 F.4th at 678 (quoting *Sveen*, 128 S. Ct. at 1822).

state is not itself a party to the affected contract, 'the State is ordinarily entitled to deference in its legislative judgment.'"[38]

Warner Valley argues both that Act 85 facially violates the Contracts Clause and violates the Clause as applied to the 2006 Lease.[39] To prevail on a facial attack, a plaintiff must show "that no set of circumstances exists under which the [a]ct would be valid."[40] By contrast, a plaintiff bringing an as-applied challenge to a law need only show that the law is unconstitutional when applied to the particular facts of the case before the court.[41] Therefore, if a party cannot prevail on an as-applied challenge, it cannot prevail on a facial challenge.[42] Accordingly, the best practice is for courts to address the as-applied challenge first, which is the procedure the Court adopts to resolve the instant motions.[43]

### 2.    Act 85 Does Not Substantially Impair the 2006 Lease

Warner Valley argues that Act 85 inserts several new terms that upset the bargain underlying the 2006 Lease and frustrate its reasonable expectations. Defendants counter that Act 85 does not impair the 2006 Lease or any oil and gas lease because it only affects the permissible actions of lease operators.

---

[38]   *Id.* (quoting *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 212 (3d Cir. 2016)).

[39]   *See* Warner Valley Partial MSJ Reply, Doc. 56 at 2, 5.

[40]   *United States v. Salerno*, 481 U.S. 739, 745 (1987).

[41]   *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

[42]   *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012) (quoting *Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008)).

[43]   *See Berry v. Schmitt*, 688 F.3d 290, 302 (6th Cir. 2012).

Warner Valley first argues that Act 85 inserted new terms into the 2006 Lease by authorizing cross-unit drilling.[44] The Court disagrees with Warner Valley's interpretation of Act 85. The statute, by its language, does not affect leases that already expressly prohibit cross-unit drilling.[45] That alone shows that Act 85 does not impair contracts that already prohibit cross-unit drilling.[46]

Act 85 replaces a restriction that prevented cross-unit drilling in the past—the 330-foot setback limit—with less burdensome restrictions, which only require a lessee to have the right to drill on both units and reasonably allocate the royalties among the respective lessors. Therefore, although Act 85 eases regulatory barrier to cross-unit drilling, it leaves the issue of whether cross-unit drilling is permissible to the parties. That does not insert new terms into or otherwise impair the 2006 Lease. The parties were and are still free to include the 330-foot setback requirement in the 2006 Lease, which would prevent cross-unit drilling. The mere fact that laws change does not frustrate Warner Valley's reasonable expectations, especially in Pennsylvania's heavily regulated oil and gas industry.[47]

---

[44]   Warner Valley Partial MSJ Br., Doc. 39 at 10-13.

[45]   58 P.S. § 34.2(a)(2) (providing as a condition to cross-unit drilling that the cross-unit well "is not expressly prohibited by the terms of a lease").

[46]   Warner Valley argues that Act 85 does not explain what an express prohibition in this context. *See* Warner Valley Partial MSJ Br., Doc. 39 at 15-16, 15 n.1. The Court interprets a statute as it would a contract: determining the plain meaning of its language. An express prohibition is one that is "[c]learly and unmistakably communicated." EXPRESS, Black's Law Dictionary (11th ed. 2019). Therefore, any contractual prohibition that would prohibit cross-unit drilling based on its language is an express prohibition.

[47]   *See Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997) ("When an industry is heavily regulated, regulation of contracts may be foreseeable; thus, when a party purchases a company in an industry that is 'already regulated in the particular to which

Warner Valley next argues that cross-unit drilling modifies the property interest conveyed in the 2006 Lease because cross-unit drilling is a "a more expansive use"[48] of the fee simple determinable interest conveyed in oil and gas leases.[49] This argument fails as a matter of property law.

"A fee simple determinable is an estate in fee that automatically reverts to the grantor upon the occurrence of a specific event."[50] Therefore, under the terms of the 2006 Lease, Defendants hold a fee simple estate in the Leasehold as long as oil and gas are being produced under the terms of the Lease.[51] With that estate comes the privileges associated with an estate of fee simple absolute, subject only to a duty to avoid waste and any other restrictions imposed by the grantor.[52] Accordingly, Defendants have the most expansive interest in the Leasehold they possibly could, subject only to limitations included in the 2006 Lease and the duty to avoid waste. Therefore, Act 85 cannot expand Defendants' rights under the 2006 Lease as they already have the most expansive property rights in the Leasehold.

---

he now objects,' that party normally cannot prevail on a Contract Clause challenge." (quoting *Veix v. Sixth Ward Bldg. & Loan Ass'n*, 310 U.S. 32, 38 (1940)). Title 58 of the Pennsylvania Code is a comprehensive statutory framework governing oil and gas production in Pennsylvania. *See generally* 58 P.S. § 1-1308.

[48] *See* Warner Valley Partial MSJ Br., Doc. 39 at 14.

[49] *T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012)) (explaining that oil and gas leases convey a fee simple determinable interest in mineral estates).

[50] *Id.* (citing *Brown v. Haight*, 255 A.2d 508, 511 (Pa. 1969)); Restatement (First) of Property § 14 (1936).

[51] *See* 2006 Lease, Doc. 1-2 at 8-9 (¶ 3).

[52] Restatement (First) of Property § 49.

Indeed, the above analysis also indicates that Act 85 does not impair the 2006 Lease. Warner Valley was free to restrict "more expansive uses" when negotiating the 2006 Lease and it is free to do so today. It argues that it could not foresee cross-unit drilling when it negotiated the 2006 Lease.[53] Just like the risk that laws may change, a party negotiating a contract also runs the risk that new technology might affect its contract. The 2006 Lease explicitly acknowledges this.[54] Act 85 merely acknowledges new technology by removing obstacles to its use but allows the parties to retain those obstacles by contracting for them. Therefore, Act 85's provisions that allow cross-unit drilling do not impair the 2006 Lease.

Warner Valley next challenges Act 85's allocation provision, which requires that a lease operator "reasonably allocates production from the well to or among each unit the operator reasonably determines to be attributable to each unit." Act 85 provides that a lease operator may use acreage as a method for allocating royalties provided that its allocation on an acreage basis "has a reasonable correlation to the portion of the horizontal well bore in each unit."[55]

Warner Valley argues that this provision of Act 85 inserts a new allocation method for cross-unit wells that did not previously exist in the 2006 Lease.[56] The

---

[53]  Warner Valley Partial MSJ Br., Doc. 39 at 15 n.1.
[54]  *See* 2006 Lease, Doc. 1-2 ("Lessor hereby grants . . . exclusive rights as may be necessary or convenient for Lessee, at its election, to explore for, develop, produce, measure and market production from the Leasehold, *using methods and techniques which are not restricted to current technology* . . . ." (emphasis added)).
[55]  58 P.S. § 34.2.
[56]  Warner Valley Partial MSJ Reply, Doc. 56 at 4.

Court again respectfully disagrees. Warner Valley's argument relies on the same misinterpretation of Act 85 that undermines its arguments referenced above. Act 85 provides a reasonableness standard for review of royalty allocation for cross-unit wells. Just like the permissibility of cross-unit drilling, Act 85 leaves the allocation of royalties to the parties, requiring only that they use reasonable terms. Accordingly, the Court concludes that the royalty provision of Act 85 does not substantially impair the 2006 Lease.

Warner Valley cites to *Northern Natural Gas Company v. Munns* in support, but its reliance is misplaced.[57] In *Munns*, the Iowa statute at issue imposed a conditional reversionary interest on a certain type of easement.[58] Before the statute was enacted, the parties in *Munns* contracted for perpetual easements.[59] The court concluded that the statute altered the duration of the preexisting perpetual easements, substantially impairing them.[60] Unlike Act 85, the *Munns* statute precluded the easement-holders from enjoying the perpetual easements they already had prior to the statute's enactment. If the 2006 Lease prohibited cross-unit drilling, Act 85 simply has no effect on it. Indeed, Warner Valley could negotiate a prohibition of cross-unit drilling into the 2006 Lease *today* and not run afoul of the statute.

---

[57]   Warner Valley Partial MSJ Br., Doc. 39 at 14-15 (citing 525 F. Supp. 2d 1103 (S.D. Iowa 2003)).

[58]   *Munns*, 525 F. Supp. 2d at 1113.

[59]   *Id.* at 1114

[60]   *Id.*

Therefore, the Court concludes that Warner Valley has a way of safeguarding its rights.

But even if Act 85 could be interpreted to grant new drilling or royalty allocation rights, it does not frustrate the reasonable expectations of parties to oil and gas leases. On a basic level, oil and gas leases like the 2006 Lease exchange a determinable fee simple interest in the mineral estate for a share of the revenue from the production of gas from said mineral estate.[61] The lessee expects a property interest, and the lessor expects money. Act 85 does not upset those expectations. Cross-unit drilling involves the same bargain as before: property for money. And Act 85 allows parties to leases to restrict cross-unit drilling as they wish. Therefore, Act 85 does not undermine Warner Valley's expectations and does not impair the 2006 Lease.

For the reasons stated above, Warner Valley fails to establish a dispute of material fact that Act 85 does not substantially impair the 2006 Lease. Accordingly, it cannot prevail on its facial challenge either, as the 2006 Lease already presents a constitutional application of Act 85.

### 3.   Even If Act 85 Substantially Impaired the 2006 Lease or Any Oil and Gas Lease, It Is Justified

Although the Court has already determined that Act 85 does not impair the 2006 Lease, even if it did, the Court concludes that Act 85 was an "appropriate and

---

[61]   *See Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759, 773 (W.D. Pa. 2004) (citing *Brown v. Haight*, 255 A.2d 508, 512 (Pa. 1969)).

reasonable way to advance a significant and legitimate public purpose."[62] In cases where the law only affects contracts between private parties, like Act 85 does, deference to legislative judgment is generally appropriate.[63]

Warner Valley argues that the goals the Pennsylvania General Assembly sought to achieve through Act 85 "justify a wide range of conduct."[64] It suggests that all of those goals "could have been accomplished with this removal of governmental 'red tape' about well locations."[65] Once the "red tape" is removed, Warner Valley further suggests that "oil and gas lessees could negotiate with lessors to modify leases to allow for cross-unit laterals."[66]

Warner Valley does not explain why any of the goals identified by the General Assembly, which will ostensibly reduce the economic cost and environmental impact of oil and gas drilling without imposing new costs on drillers, are not significant or legitimate public interests.[67] The Court finds that they are. It also finds

---

[62]  *Sveen*, 138 S. Ct. at 1822 (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983)) (internal quotation marks omitted).

[63]  *Nekrilov*, 45 F.4th at 678; *see also Commonwealth v. McMullen*, 961 A.2d 842, 846 (Pa. 2008) ("The presumption that legislative enactments are constitutional is strong."). Warner Valley asks the Court to apply a stricter standard because it believes—without support—that Act 85 "severely" impairs oil and gas leases and must accordingly be justified by "the most urgent public need." Warner Valley Partial MSJ Br., Doc. 39 at 20. The Court has concluded that Act 85 does not impair oil and gas leases. But even if that conclusion was in error, it is highly unlikely that Act 85 severely impairs oil and gas leases or the 2006 Lease for the same reasons stated above. Therefore, the Court will apply the more deferential standard in the second step of the Contracts Clause analysis.

[64]  Warner Valley Partial MSJ Br., Doc. 39 at 21.

[65]  *Id.*

[66]  *Id.*

[67]  SWN presents undisputed facts that it would not have been economically feasible to develop the Leasehold without cross-unit drilling. *See* Decl. of Michael K. Bishop, Doc. 46-1 ¶¶ 1-8.

that Act 85's approach is narrowly tailored to that interest. Act 85 explicitly preserves any standing restriction on cross-unit drilling and does not prevent any party from including such a restriction in the future.

As for Warner Valley's suggestion for a less burdensome legislative approach, the Court finds it particularly unavailing because its suggestion about the way things should be is exactly the way things are. Act 85 removed the 330-foot setback limitation—what Warner Valley calls "red tape"—and then left the permissibility of cross-unit drilling to the parties. Warner Valley had the opportunity to restrict cross-unit drilling in 2006 when it executed the lease. By choosing not to do so, it implicitly relied on regulatory restrictions that were always subject to change. And they did change. Warner Valley's remedy is with the General Assembly, not the courts.

As it suggests, Warner Valley is free to negotiate with Defendants now and in the future over cross-unit drilling rights. But it must live with the bargain it made in 2006. Instead, it seeks a second bite at the apple by way of a constitutional challenge. It has failed to meet its heavy burden, and summary judgment is accordingly appropriate in Defendants' favor on Count III.

**B.    Defendants Did Not Breach the 2006 Lease Because It Allows Cross Unit Drilling**

Having determined that Act 85 did not impair the 2006 Lease because it expressly preserves oil and gas lease parties' rights to restrict cross-unit drilling, the

Court now turns to that very issue: whether the 2006 Lease allows Defendants to drill cross-unit wells. For the following reasons, the Court concludes that it does.

Warner Valley submits that because SWN drafted it, the 2006 Lease is construed in favor of the lessor such that "[a]ll rights claimed by the lessee that are not conferred in direct terms or by fair implication . . . are to be considered as being withheld by the lessor."[68]  On that premise, it argues that the 2006 Lease does not expressly or by implication authorize cross-unit drilling. Defendants argue that it does because its language permits cross-unit drilling arrangements. The Court agrees with Defendants.

At the outset, the 2006 Lease's broad granting clause expressly allows Defendants to use "methods and techniques which are not restricted to current technology" to drill for oil and gas.[69] But Warner Valley focuses on the word "on," as it is used in the 2006 Lease's unitization and pooling provision.[70] That provision requires drilling operations to occur "*on* lands pooled, unitized or combined with all or a portion of the Leasehold."[71] Warner Valley contends that use of the word "on" indicates that the wellbore must be physically on the surface of lands pooled,

---

[68]   Warner Valley Partial MSJ Br., Doc. 39 at 11 (quoting *Pomposini v. T. W. Phillips Gas and Oil Co.*, 580 A.2d 776, 778 (Pa. Super. 1990)).

[69]   2006 Lease, Doc. 1-2 at 8 (¶ 1).

[70]   *See* Warner Valley Suppl. Br., Doc. 65 at 3-4.

[71]   2006 Lease, Doc. 1-2 at 10 (§ 12) (emphasis added).

unitized, or combined with the Leasehold.[72] It posits the following example illustrated by two diagrams:



Figure 1

---



Figure 2

Warner Valley contends that in Figure 2, the arrangement is proper under the 2006 Lease because the wellbore is physically on the surface of Unit A, which is comprised of the Leasehold and other contiguous.[73] However, in Figure 1, the wellbore is on the surface of a unit that is not unitized with the Leasehold, as Unit B sits between Unit A, which contains the Leasehold, and Unit C, upon which the wellbore sits. As such, in Figure 1, the wellbore is not "on" lands unitized with the Leasehold. At best, the well can be said to run "under" the Leasehold.[74]

Warner Valley's interpretation of the 2006 Lease is too far a stretch. The 2006 Lease also allows Defendants, in their sole discretion, "to pool, unitize, *or combine* all or any portion of the Leasehold *with any other land or lands, whether contiguous*

---

[73]   *See* Warner Valley Suppl. Br., Doc. 65 at 7-8,
[74]   *Id.*

*or not contiguous* . . . so as to create one (1) or more drilling or production units" and "to change the size, shape and conditions of any unit created."[75] It then specifies that "[a]ny [o]perations conducted on the drilling or production unit . . . shall have the same effect in continuing [the] [2006 Lease] . . . as if such [o]perations were conducted upon the Leasehold."[76]

The broad unitization provision undermines Warner Valley's "on" argument in two ways. First, it does not limit Defendants to only unitizing or pooling lands, it also allows them to combine lands. "Pooling" and "unitization" are terms of art in the oil and gas industry.[77] "Combining" is not. Generally, to combine is "[t]o couple or join two or more things together."[78] Second, the unitization provision contemplates pooling, unitizing, or combining both non-contiguous and contiguous lands.

As Defendants point out, combination follows pooling and unitization in the 2006 Lease, so it has a different meaning than the first two terms.[79] Given the 2006 Lease's reference to non-contiguous lands, the Court interprets "combining," as used in the 2006 Lease, to allow Defendants to couple or join the Leasehold with

---

[75]   2006 Lease, Doc. 1-2 at 10 (¶ 12) (emphasis added)

[76]   *Id.* at 8-9 (¶ 3).

[77]   *See* 3 KUNTZ, LAW OF OIL AND GAS § 42.5 (2022).

[78]   COMBINE, Oxford English Dictionary (online ed., 2022).

[79]   *See Clarke v. MMG Ins. Co.*, 100 A.3d 271, 276 (Pa. Super. 2014) ("Our rules of construction do not permit words in a contract to be treated as surplusage . . . if any reasonable meaning consistent with the other parts can be given to it." (quoting *Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 631 (Pa. Super. 1998))

contiguous or non-contiguous lands beyond unit boundaries. If they choose to do so, drilling on any parcel of land within that combination of parcels is as good as drilling on the Leasehold. That's cross-unit drilling.

Warner Valley chose to permit the inclusion of the term "combine" in the 2006 lease. Had it restricted the provision to unitizing or pooling or eliminated noncontiguous lands from the provision, the provision might be susceptible to an interpretation that bars cross-unit drilling. But it did not include such a restriction. Therefore, the Court concludes that the 2006 Lease allows cross-unit drilling and summary judgment is appropriate in favor of Defendants.

## IV.   CONCLUSION

The Court concludes that Act 85 did not impair the 2006 Lease. Act 85 removed a regulatory obstacle to cross-unit drilling that Warner Valley was free to include when it negotiated the 2006 Lease. Its failure to do so does not transform Act 85 into unconstitutional legislation. Therefore, there is no dispute of material fact that Warner Valley cannot prevail on its as-applied or facial challenge to Act 85. The Court further concludes that the 2006 Lease allows cross-unit drilling because its language allows such an arrangement of lands. Nothing in the 2006 Lease can be read to prohibit such an arrangement. Therefore, Warner Valley's motion is denied, and Defendants' motions are granted.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge