# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARNER VALLEY FARM, LLC, | | No. 4:21-CV-01079 |
| Plaintiff, | | (Chief Judge Brann) |
| v. | | |
| SWN PRODUCTION COMPANY, LLC, | | |
| Defendant, | | |
| and | | |
| REPSOL OIL & GAS USA, LLC, | | |
| Intervenor-Defendant | | |

## MEMORANDUM OPINION

### MARCH 1, 2023

Plaintiff Warner Valley Farm, LLC moves for reconsideration of the Court's prior ruling that Warner Valley's oil and gas lease with Defendants SWN Production Company, LLC and Repsol Oil & Gas USA, LLC (the "2006 Lease") allows an oil and gas collection technique known as cross-unit drilling. Warner Valley argues the Court incorrectly interpreted the 2006 Lease. The Court respectfully disagrees and therefore denies Warner Valley's motion.

## I.   BACKGROUND

### A.   Underlying Facts[1]

Through the 2006 Lease and a series of assignments, Warner Valley and Defendants are parties to the 2006 Lease, which permits Defendants to drill for oil and gas on an approximately 500-acre tract in Bradford County, Pennsylvania (the "Leasehold").[2] The Lease contains a Pooling/Unitization clause, which provides that Defendants have the right to, "in [their] sole discretion . . . pool, unitize or combine all or any portion of the Leasehold with any other land or lands, whether contiguous or not contiguous . . . so as to create one (1) or more drilling or production units."[3] They also have the right "to change the size, shape and conditions of any unit created."[4]

In November 2019, Pennsylvania authorized lease operators like Defendants to engage in a practice known as cross-unit drilling, unless already expressly prohibited by the lease.[5] Cross-unit drilling allows a lease operator to drill at one site

---

[1]   The facts of this matter are more fully discussed in the Court's prior opinion. *See Warner Valley Farm, LLC v. SWN Prod. Co., LLC*, ___ F. Supp. 3d. ___, 2023 WL 373237, at *1-3 (M.D. Pa. Jan. 24, 2023) (Doc. 67).

[2]   *Id.* at 1.

[3]   *Id.* "Pooling" and "unitization" are terms of art in the oil and gas industry that involve combining different tracts of land into "units," from which oil can be collected. *Id.* at 8 (citing 3 KUNTZ, LAW OF OIL AND GAS § 42.5 (2022)); *id.* at 2 n.7 .

[4]   *Id.*

[5]   *Id.* at 2 (citing P.L. 183, No. 60 (2019), *codified at* 58 P.S. § 34.2).

and extend the wellbore laterally, collecting oil and gas from deposits that are not directly underneath the well.[6]

Defendants used a cross-unit drill to access the oil in the Leasehold, as, in their view, that was the only economically feasible way to access it.[7] Warner Valley objected to the use of cross-unit drilling on the grounds that it was a violation of the 2006 Lease, which led to the instant litigation.

## B. Procedural History

In its prior opinion, the Court granted Defendants' respective motions for summary judgment, denied Warner Valley's motion for summary judgment, and issued the following declarations that are relevant to the instant motion:

> a. The 2006 Lease authorizes the drilling and operation of oil and gas wells for which the horizontal lateral extends into two or more drilling or production units.

> b. The 2006 Lease does not require the entirety of each oil and gas well to be located within a single drilling or production unit.[8]

---

[6]   *Id.* Prior to Act 85, cross-unit drilling was effectively prohibited by the Oil and Gas Lease Act, 58 P.S. § 331 *et seq.*, which then contained a setback provision prohibiting drills from traversing unit boundaries. That provision was eliminated by Act 85. *See* P.L. 183, No. 60 (2019).

[7]   *Warner Valley*, 2023 WL 373237, at *7 n.67.

[8]   January 24, 2023 Order, Doc. 68.

Warner Valley now moves for reconsideration of the Court's prior order that the 2006 Lease allows cross-unit drilling.[9] Its motion has been fully briefed and is now ripe for disposition.

## II.    DISCUSSION

### A.    Standard of Review

Motions for reconsideration are devices of limited utility. They exist to remedy manifest errors of law or fact, or to present newly discovered precedent or evidence which, if discovered previously, might have affected a court's decision.[10] But they do not exist to offer parties a "second bite at the apple."[11]

Accordingly, the movant bears the burden to show at least one of the following grounds: (1) "an intervening change in the controlling law"; (2) "the availability of new evidence that was not available when the court granted the motion for summary judgment"; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice."[12]

### B.    The Court Did Not Clearly Err in Its Interpretation of the 2006 Lease

Warner Valley argues that the Court erred in its interpretation that the 2006 Lease allows cross-unit drilling. Specifically, it argues that the Pooling/Unitization

---

[9]    Warner Valley Mot. to Recons., Doc. 70.
[10]    *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985).
[11]    *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).
[12]    *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

clause of the 2006 Lease restricts Defendants to forming one drilling or production unit that includes the Leasehold based the clause's first and last sentences.[13]

The first sentence of the Pooling/Unitization clause provides that Defendants, in their sole discretion, have the right to "pool, unitize or combine all or any portion of the Leasehold with any other land or lands, whether contiguous or not contiguous, at any time before or after the drilling of a well so as to create one (1) or more drilling or production units."[14] Warner Valley argues that just-quoted language "expressly limits the [Defendants'] 'coupling' and 'joining' activities involving the Leasehold to other lands in a drilling or production unit that includes the Leasehold."[15] Therefore, Warner Valley's position is that the 2006 Lease "only vests [Defendants] with rights to join the Leasehold with other lands in the same unit."[16]

The Court disagrees. The 2006 Lease's language expressly contemplates the creation of one *or more* units. As the Court observed in its prior opinion, had the 2006 Lease only authorized Defendants to "unitize" the Leasehold with other lands, then the 2006 Lease could be read to limit Defendants to creating just one unit that includes the Leasehold. But "unitize," as a verb, could also be read to authorize the creation of more than one unit. The additional use of the word "combine" after

---

13  Warner Valley Recons. Br., Doc. 71 at 3-10.
14  2006 Lease, Doc. 1-2 at 10 (§ 12).
15  Warner Valley Recons. Br., Doc. 71 at 3.
16  *Id.*

"unitize" strongly suggests that the 2006 Lease contemplated that the Leasehold might be combined in an arrangement containing more than one unit.

Warner Valley seeks to divert attention from the term "combine," calling the Court's distinction between the terms "immaterial based on the language of the 2006 Lease" and citing to the interpretative canon of *noscitur a sociis*.[17] It explains: "[w]hile 'combining' may be something different than 'pooling' or 'unitizing', the result of the contractual language is the same—the formation of a drilling or production unit that includes the Leasehold."[18]

As discussed in the Court's prior memorandum opinion, Warner Valley's argument ignores the plural nature of the first sentence of the Pooling/Unitization clause, which authorizes Defendants to create one *or more* units. Warner Valley does not attempt to reconcile its argument with the language authorizing the creation of "one or more units," despite its repeated quotation of those exact words.[19]

As for Warner Valley's invocation of *noscitur a sociis*, the Court fails to see how it applies to give "combine" the same meaning as "unitize." The canon suggests that the Court should read a list of terms such that each terms have similar

---

[17]   Warner Valley Recons. Br., Doc. 71 at 4.
[18]   *Id.* at 5.
[19]   *See* Warner Valley Recons. Br., Doc. 71 at 4, 5, 6, 7, 8 (quoting 2006 Lease, Doc. 24-1 at 11 (§ 12)). Each of the cited pages quotes the Pooling/Unitization provision authorizing Defendants to "'pool, unitize or combine' the Leasehold with other lands to '. . create one (1) or more drilling or production units.'" *Id.* (quoting 2006 Lease, Doc. 24-1 at 11 (§ 12)).

meanings.[20] That's exactly what the Court did. It interpreted "combine" to mean the same thing as "pool" and "unitize"—in that all three terms involve joining distinct things together.[21] But as "combine" is not a term of art, the Court gave it a broader scope than the first two terms to avoid treating it as surplusage.[22]

Warner Valley next relies on the last sentence of the Pooling/Unitization provision, which provides that drilling activity "conducted on the drilling or production unit . . . shall have the same effect in continuing [the 2006] in full force and effect as if such Operations were conducted upon the Leasehold, or as if such well capable of production was located on the Leasehold." Unlike the first sentence of the Pooling/Unitization clause's reference to "drilling or production *units*," the last sentence refers only to "the drilling or production unit."

But that language does not inevitably lead to the conclusion that under the 2006 Lease, Defendants are restricted to forming one unit that contains the Leasehold. It is not inconsistent to refer to "the unit" in the last sentence of the clause when multiple units were already contemplated in the first sentence and by other provisions of the 2006 Lease.[23] At best, Warner Valley has identified a potential

---

[20] *See* 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:16 (7th ed.) ("*Noscitur a sociis* means literally 'it is known from its associates,' and means practically that a word may be defined by an accompanying word, and that, ordinarily, the coupling of words denotes an intention that they should be understood in the same general sense.").

[21] *See Warner Valley*, 2023 WL 373237 at *8.

[22] *See id.*

[23] Section 3 of the 2006 Lease, which governs the lease term, provides that the 2006 Lease remains in effect as long as "a well capable of producing oil and/or gas is located on the Leasehold, or on lands pooled, unitized or combined with all or a portion of the Leasehold," or as long as any drilling activity is "being conducted on the Leasehold, or on lands pooled,

ambiguity that the Court concludes is sufficiently clarified by the rest of the 2006 Lease.[24] Indeed, interpreting the 2006 Lease as Warner Valley suggests would raise a conflict between its terms, as one provision would limit Defendants to creating one unit while another expressly allowed them to create more than one.[25]

As Warner Valley suggests in its briefing, "courts are generally not available to rewrite agreements or make up special provisions for parties who fail to anticipate foreseeable problems."[26] Having addressed Warner Valley's arguments, the Court concludes that it did not clearly err in interpreting the 2006 Lease.

## III.   CONCLUSION

For the foregoing reasons, Warner Valley's motion for reconsideration is denied.  An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

unitized or combined with all or a portion of the Leasehold." 2006 Lease, Doc. 1-2 at 8-9. Section 3 therefore also contemplates lands combined, but potentially not unitized, with the Leasehold.

[24] *See Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 463-64 (Pa. 2015) ("[T]he entire contract should be read as a whole . . . to give effect to its true purpose." (quoting *Pritchard v. Wick*, 178 A.2d 725, 727 (Pa. 1962))). The Court clarifies that it does not find the 2006 Lease ambiguous because the language of the last sentence in the Pooling/Unitization clause is not inconsistent with Defendants' rights to create multiple units.

[25] *See id.* at 464 ("[A] contract must be interpreted to give effect to all of its provisions. Thus, [we] "will not interpret one provision of a contract in a manner which results in another portion being annulled." (internal citations omitted)).

[26] Warner Valley Recons. Br., Doc. 71 at 2 (quoting *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015)).